[Crim. No. 4988. Fifth Dist. June 30, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
WALLACE REID, Defendant and Appellant.

358

---

COUNSEL

Qùin Denvir, State Public Defender, under appointment by the Court of Appeal, and Tom Lundy, Deputy State Public Defender, for Defendant and Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Michael J. Weinberger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CONKLIN, J.**\*—This is an appeal from a judgment of conviction of four counts of robbery in violation of Penal Code section 211. As to three of these counts, appellant was also found to have used a deadly or dangerous weapon pursuant to Penal Code section 12022, subdivision (b). Prior to trial, appellant admitted a prior felony conviction.

Appellant was sentenced to state prison for the upper base term of five years for count one, with an additional year each for the Penal Code section 12022, subdivision (b), enhancement and the prior felony conviction. The court imposed additional terms of one year for each of the other counts but ordered that those terms be served concurrently with the sentence imposed on count one. The total unstayed prison term imposed by the judgment is seven years.

### FACTS

Appellant was convicted of robberies occurring seriatim during January 1980 at Julian's Cleaners (count I), Fast Gas (count II), Russell's Donut Roundup (count III), and Delrose Cleaners (count IV). A gun was brandished at the two cleaners and the donut shop. The attendant at Julian's was threatened with physical violence. During the last three robberies, the robber wore a turtleneck sweater, a leather jacket and a cap. All victims described the robber as a black man with height estimations varying from five feet five inches to five feet eight inches. Two victims said the robber had a beard, one could not see because the turtleneck was pulled over his lower face, and one couldn't remember. One thought the gun was not real. Two identified a picture of appellant's car as the getaway car. A search of appellant's house produced a toy gun and clothing identified at trial as similar to the robber's. Appellant is a black man with a beard.

Also found at appellant's home was a drug paraphernalia "kit." Appellant had healing "track marks" on his arms. Testimony was introduced concerning the cost of street drugs.

The defense evidence consisted primarily of attacking the eyewitness identification evidence.

---

\*Assigned by the Chairperson of the Judicial Council.

## I.

Appellant's first contention on appeal is that it was error to admit evidence of his drug use because it did not have substantial probative value and the prejudicial effect of this evidence substantially outweighed any possible probative value.

Appellant's counsel made the following objection outside the presence of the jury: "Yes, Your Honor. They're going to deal in the question of narcotics or drugs, *I do not feel that any discussion of that is relevant as to this case.* We've already mentioned that Mr. Reid's conviction *involving narcotics* cannot be used, I would submit to the Court that his being on parole for that charge would also be excluded from consideration by the jury. It's not relevant. *I think it's excessively prejudicial to Mr. Reid's case.*" (Italics added.)

The ensuing discussion between the court and both counsel centered on the issue of whether evidence of appellant's drug use was relevant. The court found that the evidence was relevant to the issue of motive. There was no discussion concerning the prejudicial impact of this evidence. Respondent contends that appellant properly preserved the relevancy objection for appeal but did not properly preserve the question whether the prejudicial effect of the evidence of appellant's use of narcotics substantially outweighed its probative value. Respondent contends appellant argued only that his being on *parole* for the narcotics charge should be excluded because it was excessively prejudicial. Appellant on the other hand, contends the words "I think it's excessively prejudicial to Mr. Reid's case" referred to "any discussion" of "narcotics or drugs."

■ Questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a *specific* objection on the grounds sought to be urged on appeal. (*People* v. *Rogers* (1978) 21 Cal.3d 542, 547-548 [146 Cal.Rptr. 732, 579 P.2d 1048].) "An objection is sufficient if it fairly apprises the trial court of the issue it is being called upon to decide." (*People* v. *Scott* (1978) 21 Cal.3d 284, 290 [145 Cal. Rptr. 876, 578 P.2d 123].) In the instant case, a reading of the record indicates the trial court interpreted appellant's objection to the introduction of the drug use evidence as being an objection based on "relevancy." "In a criminal case, the objection will be deemed preseved if, despite inadequate phrasing, the record shows that the court understood the issue presented." (*Ibid.*) Since Evidence Code section 352 deals with

the exercise of the judge's discretion to exclude evidence concededly relevant, a relevancy objection to proffered evidence is normally not construed as a request that he exercise his discretion to exclude relevant evidence. "If, for example, an irrelevancy objection is made to proffered evidence, the trial judge may overrule the objection without considering Evidence Code section 352, assuming, of course, that the evidence is relevant." (Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1972) Principles of Relevancy, § 22.1, p. 290.)

Hence, we conclude that since it is reasonable to read appellant's prejudice objection as referring to evidence of his status as a parolee only, and since the trial court understood the other crimes evidence objection to refer only to its relevancy, appellant has waived his right to claim error based on the fact that the prejudicial effect of the evidence of his use of narcotics substantially outweighed its probative value. To permit an appellant to claim error on appeal where the objection was not specific and timely below, "would deprive the People of the opportunity to cure the defect at trial and would 'permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal' [citations]." (*People* v. *Rogers, supra*, 21 Cal.3d 542, 548.)

Accordingly, it becomes necessary to determine whether the trial court erred when it found the evidence of appellant's prior drug use was relevant to his motive for committing the crime.

Evidence Code section 1101, subdivision (a), provides that evidence of a person's character or trait is inadmissible when offered to prove his conduct on a specific occasion. However, subdivision (b) provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when *relevant* to prove some fact (such as *motive*, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts." (Italics added.)

It has been stated that the admissibility of other crimes evidence must be scrutinized with great care because of its highly inflammatory and prejudicial effect on the trier of fact. (*People* v. *Thompson* (1980) 27 Cal.3d 303, 314 [165 Cal.Rptr. 289, 611 P.2d 883].) Accordingly, when such evidence is proffered by the prosecution, its admissibility depends on three principal factors: "(1) the *materiality* of the facts sought to be proved or disproved; (2) the *tendency* of the uncharged crime to

prove or disprove the material fact; and (3) the existence of any *rule* or *policy* requiring exclusion of relevant evidence." (*Id.*, at p. 315.)

■ In ascertaining whether evidence of other crimes has a tendency to prove the material fact, the court must first determine whether or not the uncharged offense serves "logically, naturally, and by reasonable inference" to establish that fact. (*Id.*, at p. 316.) In addition, admission of other crimes evidence cannot be justified merely by asserting an admissible purpose in the abstract. The key question is whether the particular evidence of defendant's other offenses "*here* offered is logically relevant to prove the defendant's intent *in this case.*" (*Id.*, at p. 319.) Lastly, since substantial prejudicial effect is inherent in other crimes evidence, uncharged offenses are admissible only if they have *substantial* probative value. "If there is any doubt, the evidence should be excluded." (*Id.*, at p. 318.)

Appellant concedes that a defendant's need for money may be relevant to show motive in a robbery case. Appellant also concedes if a defendant has a drug habit which requires expenditures beyond his means, then such evidence is logically relevant to prove motive under Evidence Code section 1101. (*People v. Perez* (1974) 42 Cal.App.3d 760, 767-768 [117 Cal.Rptr. 195].)

However, appellant contends that in addition to the fact the other crimes evidence must be relevant to prove a material fact such as motive, the specific evidence offered must reasonably tend to prove that material fact. (*People v. Thompson, supra*, 27 Cal.3d 303, 315.) Citing *People v. Thompson*, appellant states that the courts must examine the precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong. Appellant contends there is a missing link in the instant case. Here, while the prosecution established the defendant was in the possession of drug paraphernalia and had track marks on his arms (thus indicating he injected drugs) and also introduced evidence of the most commonly used drugs and how much they cost, the prosecution did not establish the extent of appellant's drug habit, what drugs he used, how often he used them, and how expensive his individual habit was. Appellant contends that when the cost of the defendant's habit, if any, is not established or reasonably inferable, then the link between the proffered evidence and motive is tenuous at best. (*People v. Davis* (1965) 233 Cal.App.2d 156, 160-161 [43 Cal.Rptr. 357].) Thus, although evidence

of a defendant's drug habit was admissible bearing on the issue of motive in *People* v. *Flores* (1979) 92 Cal.App.3d 461 [154 Cal.Rptr. 851], where there was evidence that the defendant had a $250-a-day habit and in *People* v. *Perez, supra*, 42 Cal.App.3d 760, where there was evidence that the defendant had a $120-a-day habit, appellant argues it should not have been admitted in this case absent a showing of the magnitude of the defendant's drug habit. We agree.

There is no doubt that in the instant case the drug evidence (appellant's track marks and finding drug paraphernalia in his home), tended to establish appellant was a drug user. Appellant does not contest this claim. However, in order for the drug evidence to be admissible in this case, the prosecution must have established a reasonable basis for inferring the cost of *appellant's* habit or use. There was no evidence as to what drugs appellant used, or how often. There was no evidence to indicate how fresh appellant's track marks were. Absent that link, the second requirement of the test set forth in *People* v. *Thompson, supra*, 27 Cal.3d 303, is not met. The fact that appellant used drugs, without more, does not have a *tendency* to prove a motive for robbery. The prosecution's failure to establish these matters, coupled with the fact that other crimes evidence involving the use of narcotics presents a grave danger of improperly influencing the jury, establishes that the evidence should have been excluded. (Evid. Code, § 1101, subd. (a).)

Having concluded that the trial court erroneously admitted evidence of drug use, we must next decide whether this error was prejudicial to defendant pursuant to *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].

Four of the victims identified the articles of clothing found at appellant's residence as at least similar to the clothing worn by the appellant during the robberies. Indeed, appellant wore the same or similar clothing during the course of each robbery. The victim of the robbery in count one selected appellant's photographs from two separate photo lineups and she also identified appellant in court. The victim of the robbery in count two also identified appellant in court. While she was unable to identify appellant from the first photo lineup conducted, she did identify appellant from the second photo lineup. The victim of the robbery in count three gave an accurate description of appellant to the police. She was unable to identify appellant in a photo lineup. She was positive, however, of her identification of appellant in court. The two victims of the robbery in count four selected appellant's photo from two

photo lineups and also positively identified appellant in court. They also identified appellant's vehicle as the vehicle driven by the robber. Furthermore, the jacket, turtleneck sweater and caps found in appellant's apartment and introduced in the evidence matched the general description of what the robber wore during the robberies.

In addition, appellant's defense consisted solely of an attempt to discredit the identifications of the witnesses. The trial court also instructed the jury as to the limited purpose for which it would consider the evidence of appellant's use of narcotics.

Appellant contends that any error would be prejudicial in light of the fact that eyewitness evidence in general is "remarkably subject to error." However, the identification of appellant by the victims in the instant case was not the only evidence against him. The descriptions of the articles of clothing he was wearing during the commission of the offense matching the description of the clothes found in his apartment and the similar way in which he conducted all of the robberies, established a common modus operandi. In addition, as stated above, two of the victims identified appellant's vehicle as the getaway car in one of the robberies. Under the circumstances, we conclude it is not reasonably probable that a more favorable verdict would have been obtained in the absence of the evidence of appellant's use of narcotics. Consequently, reversal of appellant's conviction on this ground is not warranted.

## II.

In convicting appellant of robbery in counts one, three and four the jury found he did not use a firearm but that he did use a deadly weapon. In count two the jury found neither enhancement to be true. The jury was given CALJIC No. 17.16 (1977 rev.) which defines a deadly or dangerous weapon as "any weapon, instrument or object that is capable of being used to inflict great bodily injury or death." The prosecutor in closing arguments conceded that the "gun" used in the instant robberies was a toy gun.[1]

Appellant's next contention on appeal is that the Penal Code section 12022, subdivision (b), enhancements for use of a deadly weapon must be stricken because there is no evidence that appellant used or intended to use the toy gun as a club.

---

[1]The toy gun was made of metal and had a plastic grip.

There are two categories of "dangerous or deadly weapons." First, there are those instrumentalities which are weapons in the strict sense of the word, such as guns, dirks, etc. Second, there are those instrumentalities which are not weapons in the strict sense of the word, but which *may* be used as such, such as razors, pocket knives, hat pins, canes, hammers, hatchets, and other sharp or heavy objects. These are not weapons in the strict sense of the word and are not "dangerous or deadly" to others in the ordinary use for which they are designed. As such they may not be said as a matter of law to be dangerous or deadly weapons. The instrumentalities falling in the first classification are weapons in the strict sense of the word and are "dangerous or deadly" to others in the *ordinary use* for which they are designed and may be said as a matter of law to be dangerous or deadly weapons. (*People* v. *Graham* (1969) 71 Cal.2d 303, 327-328 [78 Cal.Rptr. 217, 455 P.2d 153].) When it appears that an instrumentality other than one falling within the first category is *capable* of being used in a dangerous or deadly manner, *and* it may be *fairly inferred* from the evidence that its possessor *intended* on a particular occasion to use it as a weapon should the circumstances require, its character as a dangerous or deadly weapon may be established, at least for the purposes of that occasion. (*Ibid.* See also *People* v. *Moran* (1973) 33 Cal.App.3d 724, 730 [109 Cal. Rptr. 287].)[2]

In the instant case the toy gun falls within the second category. While the gun was not functional, it was made out of metal and it could be *capable* of being used in a dangerous or deadly manner (for instance, used as a club). Thus, the only issue we have before us is whether it could be "fairly inferred from the evidence" that appellant *intended* to use the gun as a club should the circumstances require.

It is much easier to find that a particular item is a dangerous and deadly weapon when it is actually *used* to deliver blows. An iron pipe, a wooden club, a gun used as a bludgeon, have all been held to be dangerous and deadly weapons when they have been used as such. (See 1 Witkin, Cal. Crimes, § 267, p. 252.) Although an unloaded gun used as a club would undoubtedly meet the test of a deadly or dangerous weapon, merely pointing it at the victim would not constitute an *assault* because of the lack of present ability to injure. (*Ibid.*) ■ On the other hand,

[2]Respondent's argument that *anything* can be a dangerous or deadly weapon if the *predictable* response to its exhibition (e.g., fright, heart attack), establishes a clear and present danger to the intended victim is without support of authority and is not persuasive.

in a prosecution for first degree robbery which provides that the robbery be perpetrated by a person being armed with a dangerous or deadly weapon, the prosecution does not have to prove that the gun used was loaded or that it was real.

"Any pistol, even a short one, may be a 'dangerous' weapon within the meaning of the statute since it is capable of being used as a bludgeon. [Citation.] It is not necessary to show that defendant intended to use it. [Citation.] A jury may be instructed that if it finds that the gun was real, whether loaded or not, then the crime committed is robbery in the first degree. If it finds that the gun was a toy, it may still find that the robbery is of the first degree if it determines from the circumstances that the toy gun could have been used as a club." (*People v. Aranda* (1965) 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265].)

The court in *Aranda* held that a toy pistol could not be considered deadly or dangerous unless the toy was made of metal *and* was *used* or *intended to be used* as a club. (*Id.*, at p. 533.) The court in *Aranda* was interpreting former Penal Code section 3024, subdivisions (b) and (f). These sections provided that a person with a prior felony conviction is subject to a minimum sentence of four years if at the time of the offense he or she was armed with a deadly weapon. Deadly weapon was defined to include "any . . . pistol, revolver, or any other firearm . . . and any metal pipe or bar used or intended to be used as a club." (*Id.*, at p. 533.)

While not discussing the effect of the use of a toy pistol in a Penal Code section 12022, subdivision (b) enhancement, the Supreme Court's discussion of when a toy gun may be considered deadly is pertinent here.

We addressed the issue of whether a toy gun could be considered a dangerous and deadly weapon in an assault in *People v. Vaiza* (1966) 244 Cal.App.2d 121 [52 Cal.Rptr. 733]. In *Vaiza*, the defendant was charged with assault with a deadly weapon upon a police officer in violation of Penal Code section 245, subdivision (b). During the alleged assault the officer thought the gun used by the defendant was real. The defendant at all times insisted that the pistol was only a toy. We reversed the defendant's conviction based upon the fact that the prosecution improperly introduced into evidence "an undoubtedly lethal revolver on the spurious ground that in some details it appeared to be similar to the object which the defendant held in his hand when he threatened

the police." (*Id.*, at p..125.) Further we stated that "If a person threatens to shoot another with a toy gun, or, let us say, with a chocolate candy pistol, there is no ability to commit a violent or any injury with it on the person of another." (*Id.*, at pp. 124-125.) "[A] toy gun that is not used as a club is not a deadly weapon." (*Id.*, at p. 125.)

As stated above, it is clear that when dealing with a section 12022 enhancement for the use of a deadly or dangerous weapon, the instrumentality used here, the toy gun, falls within the second classification (not weapons in the *strict* sense). The item cannot be considered to be dangerous or deadly unless it appears that it is *capable* of being used in a dangerous or deadly manner *and* it may be inferred from the evidence that the user intended to use it as a weapon should the circumstances require. (*People* v. *Moran, supra*, 33 Cal.App.3d 724, 730.)

In the instant case, in the robberies in counts three and four the appellant displayed the toy gun and demanded money from the victims. In the robbery in count one, when the victim started screaming appellant held the gun at the victim's neck. (Appellant did not receive any deadly weapon enhancement for the robbery in count two.) We find there was no substantial evidence proving appellant intended to use the toy gun as a club. The assessments of the one-year enhancement under Penal Code section 12022, subdivision (b) must therefore be stricken.

### III.

Appellant's next contention on appeal is that his one-year enhancement for his prior felony conviction must be stricken because it was neither alleged nor established that appellant completed a prior prison term. The information alleged appellant's prior conviction and incarceration as follows: "The defendant, WALLACE REID, before the commission of the offenses charged herein, was on May 5, 1978, of the Superior Court, Sacramento County, State of California, convicted of a felony, to wit: Possession of Controlled Substance for Sale and incarcerated in the California Department of Corrections."

Prior to trial, appellant admitted he had suffered the prior conviction after being read the allegation from the information as stated above which included the fact that he was "incarcerated in the California Department of Corrections."

Penal Code section 667.5 authorizes enhancement for "prior prison terms," not prior convictions. In order to authorize additional punishment under that statute, the prosecution must allege and prove that the defendant served a continuous *completed* period of prison incarceration imposed for the particular offense. (Pen. Code, § 667.5, subds. (e) and (g).) Appellant contends it is necessary that it have been alleged that he served a completed term. Appellant concedes that if the allegation of a completed term "otherwise appears in the record," the Penal Code section 667.5 enhancement would still be proper, citing *People v. James* (1978) 88 Cal.App.3d 150, 162 [151 Cal.Rptr. 354], and *People v. Martinez* (1980) 109 Cal.App.3d 851, 856-857 [167 Cal.Rptr. 477].

Appellant's contention cannot prevail because the *record* in the instant case clearly indicates appellant served a separate prison term for his 1978 felony conviction alleged in the information. First, the information alleged he was incarcerated. Second, the record establishes appellant was on parole from the prior conviction at the time he committed the instant offenses. The probation report was before the trial court, and is included in the record before this court. The probation report indicated that on May 5, 1978, appellant was convicted of possession of a controlled substance for sale and that he was sentenced to from five to fifteen years. The record indicates he was paroled to Stanislaus County on June 5, 1979. Appellant had in fact served a prior separate prison term within the meaning of Penal Code section 667.5. This case is similar to *People v. Martinez, supra,* 109 Cal.App.3d 851. There the court held that the defect in the information was remedied by the "official documents" before the court. (*Id.,* at pp. 856-857.) Such is the circumstance in the instant case. The information contained in appellant's probation report before the trial court below remedied any defect in the information.

## IV.

Appellant's last contention on appeal is that the trial court improperly imposed the aggravated term for several reasons.

■ At the hearing on the pronouncement of judgment and sentence it was apparent that the trial judge relied heavily upon the probation officer's report. The circumstances in aggravation recited included the following: The crime involved the threat of great bodily harm, the defendant was armed or used a weapon at the time whether or not charged, the victims were particularly vulnerable, at least one of the

crimes involved multiple victims, the crime that was carried out indicated planning and sophistication, the defendant took advantage of a position of trust or confidence to commit the offense, the defendant served a prior prison term, he was on parole when he committed the crime, and his prior performance on parole was unsatisfactory. All of these are proper factors in aggravation pursuant to California Rules of Court, rule 421. The trial court discounted the "trust or confidence" factor. The court indicated that there were no circumstances in mitigation.

### A. RELIANCE ON THE WEAPON.

In imposing the upper term, the court presumably relied upon the "weapon" used in the instant case. Use of this factor is improper on the grounds set forth in the Penal Code section 12022, subdivision (b) discussion, *ante*.

### B. RELIANCE ON "THREAT OF GREAT BODILY INJURY."

Appellant contends the court's reliance on the factor of "threat of great bodily injury" was improper because "the threats were made with a toy gun and hence were no more severe than the implied threat of great bodily injury which is inherent in every robbery."

In the instant case appellant received the upper term on count one (robbery).

In *People v. Cortez* (1980) 103 Cal.App.3d 491 [163 Cal.Rptr. 1], the trial court imposed the upper term in a robbery conviction based in part on the threatening manner in which the defendant used a screwdriver and threatening language used by his crime partner. The court rejected appellant's contention that these threats were mere elements of the crime of robbery, noting that the *particular* means of force or threat is not an element of robbery, but *is* a fact related to the crime within California Rules of Court, rule 421(a). "The means of accomplishing a crime are facts relating to the crime within the meaning of rule 421(a)." (*Id.*, at p. 496.) The factor the court relied on was the fact that the crime involved a *"threat* of great bodily harm." In this case there is no doubt appellant threatened the victim in the first robbery. In fact, he told her he would blow her head off. Reliance on this factor was thus proper.

## C. APPELLANT'S DRUG USE.

In imposing the upper term in the instant case, the trial court noted a "lack of mitigating circumstances." Appellant argues there were at least two mitigating factors which the court was obligated to consider. First, appellant contends the evidence of appellant's drug use should be considered a mitigating factor just as "alcoholism is a mitigating factor" citing *People* v. *Simpson* (1979) 90 Cal.App.3d 919, 926-927 [154 Cal.Rptr. 249], and rule 423(a)(4) of the California Rules of Court, which provides as a mitigating factor that "The defendant participated in the crime under circumstances of coercion or duress, or his conduct was partially excusable for some other reason not amounting to a defense." Also appellant contends rule 423(b)(2) is applicable. This rule recognizes the factor that the "defendant was suffering from a mental or physical condition that significantly reduced his culpability for the crime."

Appellant's reliance on *Simpson* is in error. In *People* v. *Simpson, supra*, 90 Cal.App.3d 919, the appellate court found error in failure to consider alcoholism as a mitigating factor, specifically noting the failure was affirmatively established *because* the trial court referred to the alcoholism as a possible *aggravating* factor. Numerous cases have limited *Simpson* to the situation where the record *affirmatively* shows the court did not consider alcoholism as a mitigating factor. (*People* v. *Gaskill* (1980) 110 Cal.App.3d 1, 5 [167 Cal.Rptr. 549]; *People* v. *Davis* (1980) 103 Cal.App.3d 270, 281 [163 Cal.Rptr. 22]; *People* v. *Dixie* (1979) 98 Cal.App.3d 852, 855 [159 Cal.Rptr. 717].)

California Rules of Court, rule 409, provides the sentencing judge must consider the relevant criteria enumerated in the sentencing rules and these standards ". . . shall be deemed to have been considered unless the record affirmatively reflects otherwise." In the instant case, the court read and was familiar with the probation report which clearly indicated appellant's involvement with drugs. In addition, as stated above, appellant's drug use was brought out during the trial. There is nothing contained in this record that affirmatively shows the court did not consider appellant's drug addiction problems as a mitigating factor.[3]

---

[3] In view of our findings it is unnecessary for us to address appellant's apparent rhetorical ambivalency by arguing that proof of defendant's addiction was insufficient to show motive, but sufficient to mandate consideration as a mitigating factor.

Additionally, there is no requirement the court indicate its reasons for rejecting a mitigating factor. (*People* v. *Davis, supra*, 103 Cal.App.3d 270, 281 [163 Cal.Rptr. 22].)

In *People* v. *Regalado* (1980) 108 Cal.App.3d 531 [166 Cal.Rptr. 614], the court found a defendant's drug use was properly found to have no mitigating value given the longstanding nature of the defendant's addiction, his failure to deal with the problem, and the testimony of the arresting officers regarding his lucidity at the time of the offense. Similarly, the probation report here indicated the longstanding nature of appellant's drug addiction and his failure to deal with the problem. Additionally, there was no indication appellant was in any way under the influence of narcotics at the time of the instant offenses. (See also this court's opinions in *People* v. *Lambeth* (1980) 112 Cal.App.3d 495 [169 Cal.Rptr. 193], and *People* v. *Bejarano* (1981) 114 Cal.App.3d 693 [173 Cal.Rptr. 71].)

Thus, appellant's contention that the court should have considered his drug addiction as a factor in mitigation cannot stand.

D. Use of the Toy Gun.

Rule 423(a)(6) of the California Rules of Court provides as a factor in mitigation: "The defendant exercised caution to avoid harm to persons or damage to property, or the amounts of money or property taken were deliberately small, or no harm was done or threatened against the victim."

Appellant contends his decision to use a toy gun created less potential for harm to others than if he had used a loaded real gun. While the court *could* possibly have considered the use of a toy gun as a mitigating factor, it certainly was not *required* to use it as a mitigating factor. Furthermore, as stated above in the discussion concerning appellant's drug use, the record does not affirmatively show the court did *not* consider the use of the toy gun as a mitigating factor and there is no requirement that the court indicate its reason for rejecting a mitigating factor.

E. Should There Be a Remand for Resentencing?

As stated above, the court improperly relied on the use of the toy gun as a factor to both enhance and aggravate his sentence. Appel-

lant contends this means the case must be remanded for resentencing citing *People* v. *Roberson* (1978) 81 Cal.App.3d 890, 893 [146 Cal. Rptr. 777].

Appellant is in error. When there are numerous factors in aggravation and none in mitigation, a demand for resentencing is not appropriate when there is misplaced reliance on a single aggravating factor. It is not reasonably probable that a different base term would have been selected absent the alleged error. (*People* v. *Watson, supra*, 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Collins* (1981) 123 Cal.App.3d 535, 539 [176 Cal.Rptr. 696]; *People* v. *Lambeth, supra*, 112 Cal.App.3d 495, 501. See also *People* v. *Wright* (1982) 30 Cal.3d 705, 714 [180 Cal.Rptr. 196, 639 P.2d 267], which incorporated by reference this court's reasoning in *People* v. *Wright* (Cal.App. 1980).) Appellant's sentence was aggravated for at least seven reasons. One of these was improper (reliance on the "weapon"). No factors were found by the court in mitigation. Appellant was convicted of other offenses for which consecutive sentences could have been imposed, the planning with which the crime was carried out indicated premeditation, the defendant was on probation or parole when he committed the crime, and the defendant's prior performance on probation and parole was unsatisfactory. As this court stated in *People* v. *Lambeth, supra*, 112 Cal.App.3d 495, 501, "A *quantitative* and *qualitative* analysis of the multiple aggravating factors convinces us that a remand would not benefit appellant." (Latter italics in original.) Hence, appellant's contention that since the trial court relied on improper factors in aggravation, it necessarily follows that there must be a remand for resentencing is erroneous.

The judgment is affirmed. The trial court is directed to strike the use of a deadly or dangerous weapon enhancement from the judgment, issue an amended ·abstract of judgment consistent with this opinion and forward a certified copy of the amended abstract to the California Department of Corrections.

Zenovich, Acting P. J., and Hanson (P. D.), J., concurred.

Petitions for a rehearing were denied July 29, 1982, and the petitions of both parties for a hearing by the Supreme Court were denied September 1, 1982.