Filed 2/10/23  P. v. Powers CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANGELO WILLIAM POWERS,<br><br>    Defendant and Appellant. | F084640<br><br>(Super. Ct. No. 21CR-03058)<br><br>**OPINION** |

<u>**THE COURT**</u>*

APPEAL from a judgment of the Superior Court of Merced County.  Steven K. Slocum, Judge.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*       Before Peña, Acting P. J., Meehan, J. and DeSantos, J.

Defendant Angelo William Powers challenges the trial court's decision to impose a sentence rather than sending him to a drug treatment program. Following our review of the record, we conclude the court exercised its discretion appropriately and affirm the judgment.

## PROCEDURAL AND FACTUAL SUMMARY

On June 17, 2021, the fire department was called to a dumpster fire near a market in Merced. An employee of the market who reviewed surveillance video of the incident identified defendant as the person seen setting the fire. After a Merced police officer reviewed the surveillance footage, he located defendant three blocks away from the market with a bag containing a yellow safety vest, a white headlamp, and several lighters. The clothing defendant was wearing and the items in the bag matched what the officer observed in the surveillance footage. Defendant was then taken into custody and eventually charged with committing arson.

Following a jury trial, defendant was convicted of committing arson involving the property of another (Pen. Code,[1] § 451, subd. (d)). A certified record of defendant's prior convictions was entered into evidence after the jury was dismissed. Defendant raised no objections to the accuracy of those certified records before sentencing.

At the sentencing hearing, counsel for defendant noted that an alcohol and drug assessment had been ordered by the court but was not yet available. Defense counsel then stated:

> "I would be asking the Court to—and not having received the report, [defendant] wants to proceed today with sentencing.
>
> "I understand [p]robation's recommendation. I would ask the Court to consider a grant of probation—"

The trial court then engaged defense counsel in the following exchange:

---

[1] All further statutory references are to the Penal Code.

2.

"THE COURT: Can I interrupt real quick?

"If [defendant] is seeking drug treatment, then I need that report, and I don't think we need to go any further.

"If he agrees that he is not willing to abide by the terms of probation and he doesn't want—if he's not interested in a drug treatment program, then I think we can proceed today.

"[DEFENSE COUNSEL]: I—I understand. And he does wish to proceed with sentencing today.

"THE COURT: Okay.

"[DEFENSE COUNSEL]: I would ask the Court to—since the recommendation is for CDCR, I would ask the Court to impose the midterm. The midterm is—has been established by the statutory max term."

When sentencing defendant to the aggravated term of three years for arson, the trial court first stated he was not eligible for probation, then cited the certified record of defendant's prior convictions. The court noted defendant had been given repeated opportunities for drug treatment and did not appear willing or interested in drug treatment.

Toward the end of the sentencing hearing, the following exchange occurred:

"THE DEFENDANT: I never objected to the drug program. What—you said you guys were going to send a clinician. So when you said that, it kind of—the clinician came out and spoke to me. I told her that I wanted a drug treatment program.

"Then [defense counsel] informed me that we'd have to probably put this off for two weeks so she can get the report, which I was opposed to waiting for the two weeks because I figured that maybe you would come in today and find me eligible for a program today.

"But I was, you know—I did want to go to a drug treatment program. So I don't know where you guys found that I—I'm not interested or—I told [defense counsel] that I was interested. I was just opposed to waiting, putting this off for another two weeks.

"THE COURT: Okay.

3.

"THE DEFENDANT: So if that has anything—I mean, I was never opposed to that.

"THE COURT: Okay."

The court told defendant he had already entered his judgment and that defendant had the right to appeal. A timely notice of appeal was then filed in this case.

## DISCUSSION

The only issue raised in defendant's appeal involves sentencing. Specifically, defendant believes the court failed to exercise its sentencing discretion properly because the sentence was based on a "mistake of fact and the record suggests the court was unaware of the scope of its discretion to correct the sentence."

**I.     The Trial Court Did Not Abuse Its Discretion When Sentencing Defendant**

**A.     The Trial Court Did Not Proceed with Misinformation**

Again, defendant believes the trial court was acting under the mistaken belief he was not willing to go to a drug treatment program, rendering his entire sentence invalid. This interpretation of what happened during sentencing would require us to ignore the entire record of what was actually said by each party at the time and merely focus on what was said by defendant.

Generally, the party attacking a sentence bears the burden of showing the sentencing decision was irrational or arbitrary. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 179, citing People v. *Carmony* (2004) 33 Cal.4th 367, 376–377.) Without such a showing, " ' " 'the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " ' " (*Ibid.*)

Defendant's main contention is that the trial court failed to properly exercise discretion because it was relying on misinformation. On this point, defendant cites the case of *People v. Gutierrez* (2014) 58 Cal.4th 1354, to argue " '[d]efendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the

4.

sentencing court.' " (*Id*. at p. 1391). The specific fact defendant believes the court was "misinformed" about was his desire or willingness to go to a drug treatment program. However, defendant has failed to show either that the court was misinformed or that knowledge of this fact would have resulted in a different sentence.

Counsel for defendant informed the trial court that defendant wanted to proceed with sentencing despite the fact an alcohol and drug assessment report was not yet available. The court responded to this statement by saying a drug treatment program for defendant could only be considered after having an opportunity to review the report, which was not yet available. Defense counsel stated she understood the court's position, but reiterated defendant wanted to proceed with sentencing rather than wait. Counsel then requested defendant be placed on probation, adding that if the court accepted the probation department's recommendation for a prison term, the middle term be selected. Defendant, who was present in the courtroom, did not object to any of these statements made during the discussion between his counsel and the court.

Only after the trial court imposed the aggravated term of three years for his conviction did defendant raise an objection. At that point, defendant stated, "I never objected to the drug program.… I told her that I wanted a drug treatment program." Defendant then admitted he wanted to be sentenced rather than wait for the report because he "figured that maybe you would come in today and find me eligible for a program today." In our view, this was an unsuccessful gamble on defendant's part, as he could have waited two weeks when the report was supposed to be available, possibly recommending a drug treatment program as an option. Instead, sentencing went forward with only a probation report, documentation of his history with drug treatment programs, and a certified record of defendant's past convictions.

We cannot conclude there was abuse by the trial court based on misinformation. When imposing its sentence, the court referenced defendant's prior opportunities to participate in drug treatment. Yet the court was willing to wait until the alcohol and drug

5.

assessment report would be available, which potentially could have altered that conclusion. Instead, defendant insisted on proceeding with sentencing knowing a report vital to any decision to send him to drug treatment was not available for another two weeks. Any error made was not by the court.

**B.     The Sentence Imposed Is Supported by the Record**

We next address the validity of the sentence that was actually imposed. A trial court's decisions regarding sentencing are reviewed for an abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

Defendant argues the trial court failed to consider all the material facts and the applicable legal principles he considers essential to " 'an informed, intelligent and just decision' " by not considering all aggravating and mitigating factors related to the crime and defendant. Defendant further believes the record is " 'ambiguous' " on whether mitigating factors were considered by the court. (See *People v. Panozo* (2021) 59 Cal.App.5th 825.) The specific mitigating factor defendant believes was not properly considered was his drug addiction.

Defendant cites California Rules of Court, rule 4.423(b)(2) for the proposition that his drug addiction caused "a mental or physical condition that significantly reduced culpability for the crime." California Rules of Court, rule 4.423 provides factors for "[c]ircumstances in mitigation" to be considered during sentencing. Other than his own representations that his addiction reduced his culpability for the crime, no actual evidence was presented to the trial court during sentencing or before making this link. Thus, there was no requirement that the court accept this as a mitigating factor. (See *People v. Reid* (1982) 133 Cal.App.3d 354, 371.)

The record shows, however, that the trial court was not only aware of defendant's drug addiction, but also his prior participation in drug treatment programs. First, defense counsel referenced defendant's issues with substance abuse early in the hearing, arguing this fact may have contributed to his commission of the crime. Later, the court

6.

acknowledged reviewing the probation report, which detailed the various drug treatment programs defendant was referred to between 2013 and 2018 and failed to complete. After recognizing defendant received opportunities for drug treatment in the past, the court then stated, "[h]e doesn't appear today to be willing to or interested in any type of drug treatment."[2] Therefore, when the court found no "legal factors in mitigation" the court may have actually been rejecting the idea defendant's long-term drug addiction and repeated failures to address it were mitigating factors. (See *People v. Regalado* (1980) 108 Cal.App.3d 531, 539.) It should be noted further, a trial court is generally not required to state its reasons for rejecting a mitigating factor. (*People v. Reid*, *supra*, 133 Cal.App.3d at p. 371.)

The record does not reflect a failure to consider mitigating factors at the time of sentencing. Based on our review of the record available to the trial court at sentencing, we find no abuse of discretion in this case.

## DISPOSITION

The judgment is affirmed.

---

[2] It is entirely possible the court was reacting to defendant's insistence on being sentenced before the alcohol and drug assessment report was available, which he had been told was necessary before he could be considered for another program.