Filed 7/16/25  P. v. Grundstrom CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084498 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD301956) |
| DONALD RENE GRUNDSTROM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Evan P. Kirvin, Judge.  Affirmed.

Robert V. Vallandigham, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Sahar Karimi, Deputy Attorneys General, for Plaintiff and Respondent.

Donald Rene Grundstrom was convicted of assault with a deadly weapon.  (Pen. Code, § 245, subd. (a)(1).)  On appeal, Grundstrom claims the judgment must be reversed because insufficient evidence supports the jury's

finding that his walking cane was a deadly weapon.  We conclude otherwise and thus affirm.

## I.

In January 2024, Grundstrom entered a cafe in a wheelchair.  The cafe's supervisor, Paul A., had previously told Grundstrom he was unwelcome due to "erratic or harassing behavior" directed towards staff.  After Grundstrom entered the cafe, Paul calmly asked him to leave several times.  Grundstrom refused and became angry.

Paul threatened to file a trespass order if Grundstrom did not leave.  In response, Grundstrom stood up from his wheelchair and spat in Paul's face.  Grundstrom then reached behind his wheelchair, spun around with a metal cane, and forcefully struck Paul under his left rib with "full force, like . . . swinging a baseball bat."  The force of the impact "blew the wind" out of Paul, who could feel the cane was "solid metal."

As he wheeled himself out of the cafe, Grundstrom said to Paul, "'You're a snitch.  I'm going to come back and shoot you in the head.'"  Paul called 911 and followed Grundstrom outside so he could tell the police which direction he went.

After noticing Paul, Grundstrom yelled, "'Are you calling the fucking cops?'"  Grundstrom then rose from his wheelchair and sprinted towards Paul while holding his cane over his head.  Paul tried to back away, but Grundstrom caught up with and struck Paul on the left side of his head "at full force, like [he was] trying to break open a piñata."  Upon impact, Paul's ears began to ring, and he felt "extreme pain" on the left side of his face and head.  When the police arrived, they documented Paul's injuries, including "a large red mark on the left side of his head."

2

Paul was unable to continue working that night and went to the emergency room.  In the weeks following the assault, Paul suffered "dizziness, nausea, [and] sensitivity to lights."  He also experienced swelling by his left temple and jawline such that for three months it hurt to eat food or open his mouth.  In addition to Paul's testimony, the jury received photographs of his injuries.  The photographs showed swelling, a lump on the left side of Paul's head and chest, "purple and green" bruises by his hairline, and bruising near his ribs in the outline of a cane.

Grundstrom was charged with assault with a deadly weapon other than a firearm.  Relevant here, the jury was instructed that a deadly weapon "is any object, instrument, or weapon that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."

The jury found Grundstrom guilty of assault with a deadly weapon—the cane.  After Grundstrom admitted a strike prior and a serious felony prior, the trial court sentenced him to a total prison term of 13 years, comprising the upper term of four years, doubled due to Grundstrom's strike prior, plus five years for his serious felony prior.

## II.

Grundstrom contends insufficient evidence supports his conviction for assault with a deadly weapon on the theory that his cane was a deadly weapon or a weapon likely to produce great bodily injury or death.  Specifically, he claims the jury's reliance on his cane as a court exhibit, "without more," "provides nothing more than speculation" about its character as a deadly weapon.  We disagree.

## A.

Section 245(a)(1) criminalizes "assault upon the person of another with a deadly weapon or instrument other than a firearm."  A "deadly weapon" is

3

either (1) an object that is deadly per se—for example, a dirk or blackjack—or (2) an "'object, instrument, or weapon'" that is wielded such that it is capable of producing and likely to produce death or great bodily injury. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029, 1037, fn. 10.) Instruments in the second category include "razors, pocket knives, hat pins, canes, hammers, hatchets, and other sharp or heavy objects." (*People v. Reid* (1982) 133 Cal.App.3d 354, 365.)

The deadly nature of an instrument in the second category may be established if it is "*capable* of being used in a dangerous or deadly manner, *and* it may be *fairly inferred* from the evidence that its possessor *intended* . . . to use it as a weapon." (*Reid*, 133 Cal.App.3d at p. 365.) A jury may consider "the nature of the weapon, the manner of its use, and all other factors that are relevant to this issue[ ]" in deciding whether a weapon is deadly. (*In re Jose R.* (1982) 137 Cal.App.3d 269, 276.)

For a conviction under section 245(a)(1), "whether the victim in fact suffers any harm is immaterial." (*Aguilar*, 16 Cal.4th at p. 1028.) Even so, "if injuries result, the extent of such injuries and their location are relevant facts for consideration." (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1086.)

"Great bodily injury is significant or substantial injury." (*Beasley*, 105 Cal.App.4th at p. 1087.) Evidence of "multiple contusions . . . abrasions and swelling, all caused by [a] stick . . . still evident the day after the blows had been administered," has been considered sufficient to support a finding of great bodily injury. (*People v. Jaramillo* (1979) 98 Cal.App.3d 830, 837.) Combined evidence of factors such as (1) winding an arm back and running towards a victim, (2) the downward trajectory of a punch towards a victim's face, and (3) the victim being unaware of impending impact, "sufficiently

4

proves [an] assault [is] 'likely' to cause great bodily injury." (*People v. Medellin* (2020) 45 Cal.App.5th 519, 528.)

"[W]e review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) Such evidence can include not only circumstantial evidence, but also all reasonable inferences drawn from it. (*People v. Soriano* (2021) 65 Cal.App.5th 278, 286.)

B.

It is undisputed Grundstrom's cane is not deadly per se, so we look for evidence he used the cane in a manner capable of producing and likely to produce great bodily injury or death. (*Aguilar*, 16 Cal.4th at p. 1029.) Grundstrom asserts the jury's decision was based solely on the cane as a court exhibit. We view the evidence differently.

To start, though Grundstrom downplays walking canes as "relatively light weight," witnesses testified the cane used here was sturdy, weighty, solid, and metal.

Testimony regarding the force with which Grundstrom wielded the solid metal cane reasonably supports the jury's conclusion it was capable of causing and likely to cause great bodily injury or death. As described above, Grundstrom first swung his cane at Paul's side with such force it knocked the wind out of him. Paul was unaware of the impending impact and thus was unable to dodge the cane, which increased the likelihood this blow could result in great bodily injury. (See *Medellin*, 45 Cal.App.5th at p. 528.) For the second blow, Grundstrom targeted Paul's head with the force of a sprint behind him, resulting in "extreme pain."

5

The nature and extent of Paul's injuries resulting from the assault were also relevant factors the jury could consider in their deadly weapon determination. Paul was unable to continue working that night and went to the emergency room. He took a week off work to recover and continued to suffer adverse effects—including "difficulty concentrating, dizziness, [and] nausea"—for months afterward.

This evidence—in addition to the cane itself—supports the conclusion Grundstrom used his cane in a manner capable of producing and likely to produce great bodily injury or death.

C.

Grundstrom's reliance on *Beasley* is inapt, as *Beasley* is distinguishable. *Beasley* determined a broomstick and vacuum cleaner attachment were not deadly weapons. (*Beasley*, 105 Cal.App.4th at pp. 1087-1088.) There, the victim's testimony was too "cursory" to establish whether the broom was used in a manner capable of causing and likely to cause great bodily injury or death, given (1) the victim did not describe the degree of force the defendant used, (2) neither the broomstick nor a photograph of it were introduced into evidence, and (3) there was no evidence of the broomstick's composition, weight, and rigidity. (*Ibid.*) The court also noted the vacuum cleaner attachment was made of hollow plastic, and neither it nor a photograph of it was introduced into evidence. (*Id.* at p. 1088.) In contrast, here testimony detailed both the heft of the cane and the degree of force Grundstrom used when wielding it. The jury thus had ample evidence to determine Grundstrom used the cane in a manner capable of causing and likely to cause great bodily injury or death.

Grundstrom's reliance on *People v. Dozie* (1964) 224 Cal.App.2d 474 and *Aguilar*, in which the defendants used parts of their bodies to inflict

6

injuries, is also misplaced.  While *Aguilar* concluded "[b]are hands or feet . . . cannot be deadly weapons" under section 245(a) (*Aguilar*, 16 Cal.4th at p. 1034), it does not matter for our purposes because Grundstrom used a solid metal cane to assault Paul.

The People compare where Grundstrom first struck Paul—under his left rib—to that of the victim in *People v. Koback* (2019) 36 Cal.App.5th 912, 925 where the court observed a "*torso*[ is] a much more vulnerable part of the body than an extremity."  Referencing *Koback*, the People characterize Paul's ribcage *and* head as "highly vulnerable body parts" susceptible to greater injury.  In reply, despite *Koback*, Grundstrom claims no evidence supports the People's claim that Paul's ribcage was a "highly vulnerable body part," thus rendering it "pure and unsupported bald speculation."  Yet Grundstrom provides no authority for his own claim regarding his "understanding that the purpose of the human ribcage is to protect the vulnerable organs contained in the torso . . . rather than the ribcage constituting a particularly vulnerable body part on its own," and in any event he does not dispute the head is a vulnerable body part.  In the end, the force of the blows sustained to Paul's side and head combined with the solid nature of Grundstrom's cane support the jury's finding.

Grundstrom also contests the People's assertion that Paul "had to seek medical attention in the emergency room."  He claims the "only permissible inference" from the record is that any injuries inflicted with the cane did not require or necessitate medical assistance.  But we "resolv[e] all reasonable inferences in favor of the judgment."  (*People v. Holt* (1944) 25 Cal.2d 59, 83.)  While the record does not include evidence of a medical examination or diagnoses of any injuries, it contains facts about the nature and severity of Paul's injuries.  Based on Paul's "severe pain," swelling, bruising, dizziness,

7

and nausea, a jury could reasonably infer he sought medical treatment during his emergency room visit, thus supporting its conclusion Grundstrom used the cane in a manner capable of causing and likely to cause great bodily injury or death.

*  *  *

In sum, sufficient evidence supports Grundstrom's conviction of assault with a deadly weapon under section 245(a)(1).

III.

We affirm.

CASTILLO, J.

WE CONCUR:


IRION, Acting P. J.


RUBIN, J.