[Crim. No. 18825. First Dist., Div. One. Aug. 16, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES BARTON WALL, Defendant and Appellant.

## COUNSEL

Alida Buchanan, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Herbert F. Wilkinson and Ina Levin Gyemant, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Wall was convicted upon a jury's verdicts of rape by force and violence in violation of Penal Code section 261, subdivision 2, and of false imprisonment (Pen. Code, § 236), a lesser offense necessarily included in the crime of kidnaping (Pen. Code, § 207) charged in the information. He appeals from a judgment under which he was sentenced to state prison.

We state Wall's appellate contentions as they are phrased by him.

I. Contention: "The court improperly excluded testimony of Dennis Colvin."

The proof of defendant Wall's guilt depended entirely upon the credibility of the complaining witness, one Ronda, 18 years of age. She testified to the following events.

Early one morning around 1 o'clock Ronda was standing with 15 to 20 people, mostly friends "of [the] same age group," on a Main Street corner in the City of Pleasanton. Defendant Wall, a stranger to her, drove up and stopped "right out in the street." He "motioned [Ronda] over and wanted to know what was going on." She answered, "nothing," and "he asked if he could join us, . . ." She responded, "well, it's a free country, you can do what you want," and then directed him in parking his car. He got out of the vehicle and the two talked briefly, exchanging their names. He soon "took [her] arm" and led her to his car; she went with him "voluntarily," entered the car, and sat down. He closed the door, started the engine, and "took off." She "was scared," and "was trying to get out, and I was also screaming to my friends"; but she was apparently unheard.

She tried to get out, but she was unable to because "he had a hold of my hair." She continued "[c]rying, screaming, and . . . told him please don't hurt me. . . ." After driving a few blocks Wall stopped and turned the engine off. Despite her "struggling," "kicking" and "scratching" she was unable to leave the car, and Wall managed to lower her panties. For a "[c]ouple minutes" he engaged in sexual intercourse with her against her will. Finally she was able to open the car door, whereupon "he halfway pushed me out, and I halfway rolled out of the car." She got to her feet and "ran" back to her friends on the Main Street corner, where "[b]ecause they didn't help" her, she "punched one of [her] friends in the face."

Ronda promptly reported the affair to the police, and about five hours later she was examined by a doctor. The doctor found no physical evidence of rape. Blood, but no sperm, was found by him in her vagina. He concluded that the blood resulted from a menstrual period following her admitted recent abortion. Blood in the "crotch" of her underwear was consistent with the menstrual bleeding. The doctor examined her "head to toe" for "bruises" or "abnormalities" or other signs of violence; he found none, except "a bluish discoloration over her right hip area," which Ronda had pointed out to him.

Wall testified on his own behalf. He generally agreed with Ronda's version of their meeting. She had asked: "Why don't you join us?" He said "okay" and after the two of them had parked his car, she "asked if I would take her in my car to a party on the other side of town." He agreed, they drove off, and then Ronda started making several suggestions, such as: " 'Well, after we leave this party we'll go to this other place, if nothing's happening there we'll go here,' is what she was saying. . . . I told her I didn't mind taking her to the first party that she suggested, but that I had to get up in the morning, I had to get up early and it was a late hour, and I didn't care to chauffeur her around. . . . She made several remarks about my being a big boy and I can stay up late, and she became very hyper, you might say, . . ." She became "abusive," "agitated," and "belligerent."

Wall then started to drive back to the corner of Main Street where he had met Ronda; she "became outraged at the fact that I was going to take her directly back to her friends," and then she said, "Well, look, son of a bitch, if you're going to do that, just let me out of here." Wall then slowed down and while the car was still moving about five miles per hour she jumped from it. She got to her feet and started running toward the Main Street corner.

Wall further, and expressly, denied having sexual intercourse with Ronda, and her accusations of violence.

It will be noted that the issue before the jury and the trial court was the credibility of Ronda. Indeed, it may be said that it was the only issue.

During the trial Wall's attorney, out of the jury's presence, made an offer of proof that one Colvin, admitted by Ronda to be an "ex-boyfriend," could testify that she had threatened to make a *false accusation of rape* against him. The trial court, ruling that such testimony might be adduced, concluded that "it is not evidence which is prohibited by [Evid. Code's 1974 amendment of] section 1103, subdivision (2), . . . because it is not offered to prove or to disprove the question of consent which that section seems to be concerned with." The evidence was permitted on the issue of Ronda's credibility, the court stating: ". . . *I think it is supported as a trait of character for fantasizing, and, as such, would go to the very issue before the court and the jury.*" (Italics added.)

Colvin thereafter testified before the seated jury to the following.

He had been Ronda's "boyfriend for approximately a year and a half." There came a time when in Oakland, riding together in Colvin's car, the couple had an argument over a "date" he had had with another girl. Ronda became "hysterical" and "she started hitting me and kicking me, and as I was driving down the road she opened the door . . . and tried to jump out." After a struggle she did jump out. The car was stopped and Colvin got out and ran after her while she was running down the street, "screaming and yelling [obscenities], and so forth, and people were looking out the windows." She demanded to be left alone, and she "*told me if I didn't leave her alone she'd start screaming rape.*" (Italics added.) Colvin was able finally to induce Ronda to return to his car, but the boyfriend-girlfriend relationship was ended.

Following Colvin's testimony the trial court had second thoughts about its ruling, stating that the testimony was "more specifically characterized as evidence of a specific instance which is tending to prove a trait of character offered to attack the credibility of the witness and, as such, is prohibited by section 787, so the district attorney's motion to strike the testimony of Mr. Colvin on the grounds of impermissible character evidence will be granted."

The jury were then instructed: "You'll recall that yesterday before the defendant testified, a Mr. Dennis Colvin was called by the defense to testify. He testified to a certain experience which he had in the City of Oakland with the victim in this case, Ronda .... The district attorney has asked this court to strike his testimony concerning that instance on the basis that it is impermissible character evidence. The district attorney's objection to that testimony has been sustained by me, and I instruct you that you are to disregard the portion of Mr. Colvin's testimony which concerned the victim in this case, Ronda . . ., and the incident that occurred in the City of Oakland."

■ It is the foregoing ruling and jury instruction upon which the instant assignment of error is founded. We proceed in our consideration of it.

At the threshold we note, as did the trial court, that we are not concerned with the 1974 amendment of Evidence Code sections 782 and 1103, subdivision (2), relating to admission, on the issue of consent, of evidence of *prior sexual conduct* of the alleged victim of a sex crime. Neither of the parties appears to disagree.

We first observe that the trial court had concluded (as do we) that Colvin's testimony was "evidence relevant to the credibility of a witness" (i.e., Ronda) having a "tendency in reason to prove or disprove [a] disputed fact that is of consequence to the determination of the action." The testimony was accordingly "relevant evidence" according to Evidence Code section 210. ■ As said in *People* v. *Lavergne,* 4 Cal.3d 735, 742 [94 Cal.Rptr. 405, 484 P.2d 77]: *"Evidence going to the credibility of a witness is relevant evidence."* (Italics added.) And Evidence Code section 351 declares: "Except as otherwise provided by statute, *all relevant evidence is admissible."* (Italics added.) ■ The trial court had further concluded that the testimony's probative value was such that it should not exercise Evidence Code section 352's permitted discretion to exclude it. Instead, it was finally rejected because the court was of the opinion that Evidence Code section 787 *mandated* the exclusion regardless of the testimony's relevance and probative value.

The issue before us is thus narrowed to the question whether, in a criminal trial on a charge of rape by force and violence or threats of great and immediate bodily harm, the trial court—under the discretion conferred by Evidence Code section 352—may allow collateral evidence of specific instances of the complaining witness' nonsexual conduct as

proof of a character trait tending in reason to disprove the truthfulness of her testimony at the trial.

The relevant statutes are Evidence Code sections 780, 787 and 1103, subdivision (1).

Evidence Code section 780 recites that, except as otherwise provided by statute, *the jury may consider in determining the credibility of a witness any matter tending in reason to establish a trait of character for untruthfulness and more specifically, the falsity of his or her testimony.*[1]

The only statute found by us and appearing at least arguably to "provide otherwise," is Evidence Code section 787, which was here finally relied upon by the trial court.

Section 787 states:

"Subject to Section 788 [permitting evidence of here irrelevant prior felony convictions], *evidence of specific instances of his conduct* relevant *only* as tending to prove a trait of his character *is inadmissible to attack or support the credibility of a witness."* (Italics added.)

Under section 787 the testimony of witness Colvin would, at least debatably, appear to have been barred.

The remaining statute of our immediate concern is, as noted, Evidence Code section 1103, subdivision (1). It provides that *in a criminal action,*

---

[1]Evidence Code section 780: "Except as otherwise provided by statute, *the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony* at the hearing, including but not limited to any of the following:

"(a) His demeanor while testifying and the manner in which he testifies.

"(b) The character of his testimony.

"(c) The extent of his capacity to perceive, to recollect, or to communicate any matter about which he testifies.

"(d) The extent of his opportunity to perceive any matter about which he testifies.

"(e) *His character for honesty or veracity or their opposites.*

"(f) The existence or nonexistence of a bias, interest, or other motive.

"(g) A statement previously made by him that is consistent with his testimony at the hearing.

"(h) A statement made by him that is inconsistent with any part of his testimony at the hearing.

"(i) *The existence or nonexistence of any fact testified to by him.*

"(j) His attitude toward the action in which he testifies or toward the giving of testimony.

"(k) His admission of untruthfulness." (Italics added.)

evidence of a trait of character in the form of *specific instances of conduct* of the victim of the crime for which the accused is prosecuted is not made inadmissible if offered to prove *conduct of the victim in conformity with the trait of character.* This statute, contrary to section 787, purports to allow the testimony of witness Colvin tending to establish Ronda's trait of character for falsely making such accusations as were the subject of her trial testimony.[2]

It must fairly be said that these apparently discordant statutes furnish little aid in resolving the issue at hand. We have therefore sought guidance from expressed legislative policy, and judicial authority, in respect of their subject matter generally. ■ "The general policy of the state with respect to a given subject may afford aid in construing statutory provisions relating thereto, where their real meaning, intent, or scope is not clear." (45 Cal.Jur.2d, Statutes, § 174, p. 674, and see authority there cited.)

The Law Revision Commission which drafted and sponsored the Evidence Code has made clear that evidence such as that with which we are concerned may be of a *collateral* nature; it need not be directly related to the subject of the charge. In its comment following Evidence Code section 780, the commission stated: "There is no specific limitation in the Evidence Code on the use of impeaching evidence on the ground that it is 'collateral.' The so-called 'collateral matter' limitation on attacking the credibility of a witness excludes evidence relevant to credibility unless such evidence is independently relevant to the issue being tried. It is based on the sensible notion that trials should be confined to settling those disputes between the parties upon which their rights in the litigation depend. . . . [¶] The effect of Section 780 (together with Section 351) is to eliminate this inflexible rule of exclusion. This is not to say that all evidence of a collateral nature offered to attack the credibility of a witness would be admissible. Under Section 352, the court

---

[2]Evidence Code section 1103, subdivision (1):

"(1) In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if such evidence is: (a) Offered by the defendant to prove conduct of the victim in conformity with such character or trait of character. . . ."

Evidence Code section 1101, referred to by section 1103, provides no exception applicable here, for it expressly states that: ". . . Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

We have left unquoted the irrelevant remainder of section 1103 which concerns mainly its above noted 1974 amendment forbidding generally, evidence of prior nonmarital consensual sexual conduct of the alleged rape victim.

has substantial discretion to exclude collateral evidence. The effect of Section 780, therefore, is to change the present somewhat inflexible rule of exclusion to a rule of discretion to be exercised by the trial judge." (See Cal. Law Revision Com. com. following § 780, Deering's Ann. Evid. Code, and West's Ann. Evid. Code.) "These comments are declarative of the intent not only of the draftsmen of the code but also of the legislators who subsequently enacted it." (*Kaplan* v. *Superior Court,* 6 Cal.3d 150, 158, fn. 4 [98 Cal.Rptr. 649, 491 P.2d 1].)

■ It thus appears that legislative policy favors a rule that "collateral" evidence of relevant "traits of character" may generally be admissible for impeachment of a witness' credibility. Its admissibility will be subject only to the discretion conferred upon the trial court by Evidence Code section 352.

On the same subject, but more closely related to the case at hand, the state's Supreme Court in *In re Ferguson,* 5 Cal.3d 525, 534, stated: "*In sex offense cases the rules concerning permissible methods of impeachment of the prosecuting witnesses are more liberal than those allowed generally.*" (Italics added.) And the high court has more recently stated in *People* v. *Rincon-Pineda,* 14 Cal.3d 864, 883-884 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845] a sex offense case, that in "any case in which the victim of the alleged offense has testified for the prosecution," the jury should be instructed substantially in the relevant language of Evidence Code section 780.

*People* v. *Lavergne, supra,* 4 Cal.3d 735, 742, further instructs that: "Section 780 of the Evidence Code provides that, except as otherwise provided by statute, the court or jury in assessing the witness' credibility may consider '*any* matter that has any tendency in reason to prove or disprove the truthfulness of [the witness'] testimony. . . .' That section sets forth 'a convenient list of the most common factors that bear on the question of credibility.' (Law Revision Com. Comment on Evid. Code, § 780.) Among those matters which the jury or judge may consider is the 'existence or nonexistence' of *any* fact testified to by the witness. (§ 780, subd. (i).) *The nonexistence of a fact testified to is relevant insofar as it is an indication of the witness' general truthfulness and credibility on the witness stand. . . .* [¶] [Such evidence, tending in reason to prove or disprove the truthfulness of the witness' testimony, is] therefore relevant and admissible unless the judge found, in the proper exercise of his discretion, that it should be excluded under section 352 or if there was some other specific limitation on the introduction of such evidence." (Latter italics added.)

■ Significant also, in relation to the policy under discussion, is the rationale expressed by *Jennings* v. *Superior Court,* 66 Cal.2d 867, 877 [59 Cal.Rptr. 440, 428 P.2d 304]: " 'While the trial judge has broad discretion to control the ultimate scope of cross-examination designed to test the credibility . . . of a witness . . . , yet wherever possible that examination *"should be given wide latitude, particularly in cases involving 'a witness against a defendant in a criminal prosecution' "* . . . .' " (Italics added.)

In *People* v. *Reyes,* 62 Cal.App.3d 53, 63 [132 Cal.Rptr. 848], an objection was made to evidence of specific instances of conduct offered to prove *nonexistence of a fact testified to by a defendant witness.* The evidence had a "relevancy to attack [his] credibility as a witness." The court said: "This evidence is not made inadmissible by other rules that restrict the use, for impeachment purposes, of evidence that a witness committed a misdemeanor. Evidence Code section 787 has no application since it precludes evidence of specific instances of a witness' conduct to attack credibility only if such evidence is *'relevant only as tending to prove a trait of his character.'"* (Italics added; and see *People* v. *James,* 56 Cal.App.3d 876, 886 [128 Cal.Rptr. 733]; *People* v. *Mayfield,* 23 Cal.App.3d 236, 243 [100 Cal.Rptr. 104].) *People* v. *Reyes* thus construed section 787 as *applicable* where the questioned evidence is relevant *only* as tending to prove a trait of character, but *inapplicable* where relevant not only for that purpose but also, as here, for the purpose of attacking the witness' credibility.

*People* v. *Gardner,* 52 Cal.App.3d 559, 561 [125 Cal.Rptr. 186], disapproved on other grounds in *People* v. *Wheeler,* 22 Cal.3d 258, 287 [148 Cal.Rptr. 890, 583 P.2d 748], reached a similar conclusion, as follows: "[T]he trier of fact 'may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing . . . .' (Evid. Code, § 780.) Specifically included in this section is '[t]he existence or nonexistence of any fact testified to by him' (*id.,* subd. (i)). Here, the conviction was not offered or asserted as a specific instance of conduct 'tending to prove a trait of his character,' and thus was not within the bar of section 787. *It was not offered to show his lack of 'general credibility' of his character for integrity. Rather, it was offered to show that he had lied as to a material issue in the particular testimony he gave in this case."* (Italics added.)

■ Relevant also to our inquiry is a rule of statutory interpretation. It will be remembered that Evidence Code section 787, which was finally

relied upon by the trial court, is a *general statute,* purporting to apply to civil and criminal actions alike. On the other hand, section 1103, subdivision (1), authorizing—"evidence of . . . a trait of character (in the form of . . . specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted"—is a *special statute,* apposite by its terms only to "a criminal action."

■ It is a settled rule of statutory interpretation that a *special* statutory or code provision will control over a *general* provision touching upon the same subject. (See *People* v. *Gilbert,* 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580]; *Estate of Dolbeer,* 153 Cal. 652, 659 [96 P. 266]; *Tousley* v. *Dishman,* 90 Cal.App. 759, 761 [266 P. 373].) We apply that rule here.

We have found no authority tending to impugn the legislative policy and judicial authority which we have here considered.

■ From all of the foregoing we conclude that in a criminal trial upon a charge of rape by force and violence or threats of great and immediate bodily harm, the trial court—in the exercise of discretion conferred by Evidence Code section 352—may allow collateral evidence of specific instances of the complaining witness' nonsexual conduct as proof of a trait of character tending in reason to disprove the truthfulness of her testimony at the trial.

The trial court accordingly erred in its reliance upon Evidence Code section 787. We further conclude that the error was not harmless according to the criteria of *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243], cert. den., 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70], and that the judgment must be reversed.

We proceed to consider other contentions of Wall relating to claims of error which may recur at a retrial.

II. ■ Contention: "False imprisonment is a lesser included offense in the crime of rape."

The contention is in reality an argument that the trial court committed error in not so instructing. Assuming arguendo that "false imprisonment is a lesser included offense in the crime of rape," here the evidence shows that if guilty at all, Wall was guilty of the greater offense of rape. In such a case the trial court need not instruct on a lesser, necessarily included,

offense. (*People* v. *Berry,* 18 Cal.3d 509, 519 [134 Cal.Rptr. 415, 556 P.2d 777].)

III. ■ Contention: "It was error to give an instruction on intoxication."

There was some evidence of Wall's intoxication at the time of the charged offenses. The trial court, in the language of CALJIC No. 4.20, instructed the jury that "intoxication is not a defense" to either of the charged crimes. Since neither the crime of forcible rape, nor that of kidnaping, requires a specific intent, the subject instruction was not erroneous. (See 1 Witkin, Cal. Crimes (1963) Defenses, §§ 143-144, pp. 136-138.)

IV. ■ Contention: "Appellant's concurrent sentences violate Penal Code, § 654."

The contention has merit. Assuming arguendo the facts found true by the jury, Wall's "intent and objective" was manifestly the crime of rape, and the false imprisonment was but a means of its accomplishment. Upon conviction of both of those crimes under such circumstances, an accused may be punished only for one. (See *People* v. *Gardner, supra,* 52 Cal.App.3d 559, 562; *People* v. *Rocco,* 21 Cal.App.3d 96, 109-110 [98 Cal.Rptr. 365]; *People* v. *Ferguson,* 1 Cal.App.3d 68, 75 [81 Cal.Rptr. 418].)

The judgment is reversed.

Racanelli, P. J., and Newsom, J., concurred.

· A petition for a hearing by the Supreme Court was denied September 14, 1979, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied October 11, 1979.