[Crim. No. 11151. Third Dist. Sept. 10, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY M. COLLINS, Defendant and Appellant.

536

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Antonia D. Radillo, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Ramon M. de la Guardia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CARR, J.—Defendant appeals following his plea of guilty to kidnaping (Pen. Code, § 207) with use of a firearm (Pen. Code, § 12022.5), attempted robbery (Pen. Code, §§ 664 and 211) and burglary (Pen. Code, § 459).

The relevant facts surrounding the offenses are that shortly after closing time, defendant approached Sandra Prato, a clerk in a Safeway

supermarket, pointed a .357 magnum at her and ordered her to the back of the store, where he taped her hands and feet. The other clerk in the store, apparently alerted by Ms. Prato's scream, summoned the police. After defendant was unable to find the other clerk, he returned to Ms. Prato, untaped her feet and walked behind her to the front of the store. There the police confronted defendant, and he grabbed Ms. Prato at the waist and put the gun to her head, threatening to shoot if they did not retreat. Throughout the next two hours there were negotiations between defendant and the police; during this time Ms. Prato's hands were retaped in front of her and defendant held the cocked gun, with his thumb on the hammer, to Ms. Prato's head or throat. After some time, defendant was provided with a car driven by Captain Mauch of the Lodi Police Department. While proceeding to the car from the store, defendant continued to hold the gun at Ms. Prato's head. Defendant and his two hostages then drove around the Lodi, Stockton and delta areas for several hours. Once when a police car came within sight, defendant cocked the gun and pressed it against Ms. Prato. The ordeal came to a conclusion when Captain Mauch shot defendant.

Defendant was sentenced to the upper term of seven years for kidnaping, with an additional two years for gun use. The court stated the aggravating factors were "numerous." One factor cited by the court was the holding of the cocked gun to Ms. Prato's head was callous and vicious. Other aggravating circumstances cited by the court were that the victim was particularly vulnerable,[1] defendant's actions demonstrated planning, his prior five or six felony convictions, prior uncharged prison terms, and that he was on probation at the time of the offense.

■ Defendant contends the court improperly used the fact of gun use to aggravate and enhance his sentence. (Cal. Rules of Court, rule 441(c).)

In *People* v. *Smith* (1980) 101 Cal.App.3d 964, 966-967 [161 Cal. Rptr. 787] the Court of Appeal for the Fifth District found an identical contention persuasive. The *Smith* court held that the entire spectrum of conduct between mere pointing of a firearm to its actual firing may constitute "use of a firearm" under Penal Code section 12022.5 and that the cocking of a gun may not be separated from other evidence of

---

[1]The court noted that Ms. Prato was "within a hair of dying there for several hours" and that had defendant tripped or his finger gotten tired," she was unable to protect herself.

its use to permit both imposition of an upper term and a gun use enhancement. However, we do not find the reasoning of the *Smith* court persuasive in the context presented here.

In our view, one who holds a cocked gun to his victim's head over a period of several hours is significantly more culpable than one who merely points the weapon at the victim. The conduct of the former is certainly indicative of viciousness and callousness. (Cal. Rules of Court, rule 421(a)(1).) Additionally, one of the goals to be achieved by the determinate sentencing law is imposition of "terms proportionate to the seriousness of the offense" (Pen. Code, § 1170, subd. (a)(1).) Under the factual circumstances of this case, the sentencing court did not err in finding defendant's continual holding of a cocked gun to his victim's head a factor in aggravation.

■ Moreover, disregarding defendant's gun use, there remain several other aggravating factors which support the imposition of the upper term.[2] The single mitigating factor was that defendant was habituated to amphetamines. The court observed that defendant was not under the influence of any drug during the commission of the offense, amphetamines do not affect a person's ability to differentiate between right and wrong, defendant was not a new addict but had been addicted for several years and resorted to dealing in drugs to support his habit. The court concluded that "the mitigating factor is not very strong" and was "insignificant to the comparison of many strong aggravating factors." Assuming arguendo the court was precluded from considering the manner in which defendant used the gun as a factor of aggravation, the other recited factors demonstrate it is not reasonably probable the court would have imposed any term other than the upper term. (*People v. Dozier* (1979) 90 Cal.App.3d 174, 179 [153 Cal.Rptr. 53]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Defendant contends and respondent concedes that the court erred in calculating defendant's presentence good time/work time credit. It is now established that the formula for computing such credits results in an addition of one-half of the time spent in actual custody (*In re Allen* (1980) 105 Cal.App.3d 310, 315 [164 Cal.Rptr. 319]; *People v. McMillan* (1980) 110 Cal.App.3d 682, 686 [167 Cal.Rptr. 924].)

---

[2]Contrary to defendant's argument, the court did not make "triple use" of defendant's conduct with the gun in finding the victim particularly vulnerable. Disregarding his gun use, the record contains substantial evidence of defendant rendering his victim vulnerable in taping her hands and feet.

The record indicates that defendant spent 135 days in actual custody but the court erroneously calculated the presentence credit as an additional 44 days.

The record clearly indicates that the trial court considered the question of presentence conduct credit, that defendant had done nothing to lose that credit, and that the court erred only in calculating the amount of credit attributable to 135 days of actual presentence confinement. In such circumstances, it is unnecessary to remand for resentencing.

The judgment is modified to provide that defendant is entitled to 67 days presentence conduct credit. The trial court is directed to forward an amended abstract of judgment reflecting the modification to the Department of Corrections.

As so modified, the judgment is affirmed.

Puglia, P. J., and Reynoso, J., concurred.

A petition for a rehearing was denied October 8, 1981, and appellant's petition for a hearing by the Supreme Court was denied November 27, 1981. Bird, C. J., Tobriner, J., and Kaus, J., were of the opinion that the petition should be granted.