[No. B019951. Second Dist., Div. Seven. June 10, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EDWARD BURRELL-HART, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Richard Lennon, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Carol Wendelin Pollack and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THOMPSON, J.—Defendant appeals from the judgment, following a jury trial, of one count of forcible rape (Pen. Code, § 261, subd. (2)), and two counts of rape with a foreign object (Pen. Code, § 289, subd. (a)). Defendant was sentenced to state prison for 16 years pursuant to Penal Code section 667.6, subdivision (c). Defendant contends that the trial court erred in (1) preventing him from presenting evidence of the victim's allegedly false prior accusation, and (2) in sentencing him. For the reasons that follow, we will affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On Friday evening, September 13, 1985, the victim, Mary D., drove to the Aquarium Club, a bar where she had recently worked, to visit friends.

About 1:30 a.m., or later, she told one of the owners, Tilo, that she was leaving and asked him to escort her to her car. Tilo told her that he was busy and upon seeing defendant walking in, he asked defendant to walk her to her car. Mary knew defendant from when she had worked at the Aquarium Club beginning in July. Prior to September 13, she had had "somewhat" of an argument with defendant where, according to her, defendant "tried to override [her] decision as far as maintaining the bar," and she went to Tilo to talk about the dispute between defendant and her.

After defendant walked her to her car, he asked her for a ride to his house and she consented. When they arrived there, she went up to his apartment for a drink or coffee. Defendant then violently assaulted and raped her.[1] Mary estimated she was in the apartment about 30 to 45 minutes.

After leaving the apartment, she drove her car to look for a police station. She noticed a bail bondsman's office which was open. At 2:30 or 3 a.m., Mary, who was crying and visibly upset, entered the office. She told the bail bondsman what had happened and described the person who had attacked her. As she did so, defendant walked by the bail bondsman's office at which time the bail bondsman called her attention to him. She looked out the door down the street and said that was him. The bail bondsman called the police. The police first took her back to defendant's apartment house and unsuccessfully attempted to locate the suspect. They then took her to Harbor General Hospital where a doctor confirmed that she had bruises and had had recent intercourse.

The defense was denial and alibi. In addition to presenting various alibi witnesses who testified to seeing or being with defendant around the time of the alleged rape and attempting to undermine the victim's credibility by evidence that she was drunk that night, the defense also tried to present evidence that she had a history of making rape or attempted rape accusations against men with whom she had had fights or disagreements at this same bar.

During cross-examination of the victim, defense counsel asked the victim if she had ever accused a man named David (who was a customer at the bar) of having attempted to rape her. The prosecution objected on the grounds of irrelevancy and also under Evidence Code section 352. A hearing was held pursuant to Evidence Code section 402 regarding the defense motion to admit evidence of an alleged prior false claim of rape or attempted rape by the victim. Susan Gutierrez, who had been employed at the

---

[1]Mary testified that he socked her in the head, with a closed fist, slapped her on her face, choked her, "jammed his finger" up her rectum, bit her on the breasts around the nipples, stuck his fingers in her vagina, and then inserted his penis in her vagina for a very short time.

Aquarium Club and knew defendant, Mary, and the customer David Fields, testified that about the first part of September she had witnessed a disagreement between Fields and Mary where Fields slapped Mary. The next day Mary told Susan that Fields "had tried to break into her house the night before and tried to rape her and she had bruises." Fields testified to an argument between Mary and him in which he slapped her and she threw a glass at him. Fields denied thereafter returning to her house or forcing himself inside. He also claimed she never accused him of raping her or trying to rape her. Mary testified to a similar fight but also claimed that when she went home Fields entered the house and grabbed her. She testified that the following day she did tell one of the people in the bar about the incident and may have said that Fields "attacked" her but she did not say Fields raped her or tried to rape her.

After argument by both defense and prosecution counsel, the trial court denied the defense motion. Citing Evidence Code sections 352, 1101 and 1103, the trial court found that the admission of such evidence was "not very probative on any issue in this case and clearly will necessitate undue consumption of time, [and] clearly will create substantial danger of undue prejudice, confusing the issues or of misleading the jury." The jury found defendant guilty as charged on all three counts.

## II.

### THE WRONGFUL EXCLUSION OF EVIDENCE WAS HARMLESS

■ Defendant contends that the trial court abused its discretion in ruling the evidence inadmissible. Defendant claims he should have been allowed to attempt to bolster his defense of denial by showing that Mary, with whom defendant had argued prior to the accusation, had previously falsely accused another man of breaking into her home and attempting to sexually assault her after similarly having argued with him. Defendant argues that he was trying to present this evidence to offer the jury a motive for Mary to lie about him and falsely accuse him of rape.

We agree with defendant that this evidence was relevant in that it had a tendency in reason to prove or disprove a disputed fact. (See Evid. Code, § 210; *People* v. *Wall* (1979) 95 Cal.App.3d 978, 984 [157 Cal.Rptr. 587].) The evidence which defendant sought to introduce could support a finding that Mary, having previously made a false accusation of physical and threatened sexual abuse against a man with whom she had fought would under similar circumstances herein have a motive to testify falsely against

defendant with whom she admittedly had a prior disagreement or fight and with whom, according to one witness, she was not even on speaking terms.[2]

Furthermore, the evidence was not inadmissible hearsay. At the Evidence Code section 402 hearing, Mary repeated her accusation of assault against David Fields and Fields denied it. Although at that hearing Mary denied accusing Fields of attempting to rape her, Susan's statement to the contrary established a prior inconsistent statement on Mary's part.

Furthermore such evidence is explicitly authorized by Evidence Code section 1103, which provides that in a criminal case the defendant may offer "evidence of the character or a trait of character ... of the victim of the crime for which the defendant is being prosecuted" to prove "conduct of the victim in conformity with such character or trait of character." As Witkin has pointed out, Evidence Code section 1103, subdivision (a), extended the rule of prior cases wherein an accused claiming self-defense might prove the dangerous character of the victim to cover the victim of any crime. (See 1 Witkin, Cal. Evidence (3d ed. 1986) § 340, p. 309.)

In *People* v. *Wall, supra,* 95 Cal.App.3d at pages 984, 987-979, in a strikingly similar situation to the case herein, the *Wall* court held that the trial court, under the discretion conferred by Evidence Code section 352, could properly allow the defense to introduce in a criminal trial, on a charge of forcible rape, collateral evidence consisting of the victim's ex-boyfriend's testimony that she had previously threatened to accuse him of rape. Such evidence was admissible under section 1103, subdivision (a), as a specific instance of nonsexual conduct tending to disprove the truthfulness of the complainant's testimony.[3]

Other courts have similarly upheld this use of Evidence Code section 1103. Thus, for example, in *People* v. *Randle* (1982) 130 Cal.App.3d 286,

---

[2] In argument before the trial court at the evidentiary hearing, defense counsel pointed out that it was "extremely relevant" that the victim had an altercation in the very same bar where the altercation herein commenced and that on the very next day the victim, to Susan, had accused David Fields of having tried to rape her; since there were at least intense feelings between defendant herein and the victim, an inference could be drawn that this was another attempt to get vengeance on a second Black man who displeased her. Moreover, Susan Gutierrez had testified in open court that after the victim and defendant had an argument towards the end of August or the first week of September, they did not even talk any more to each other.

[3] We note, as *Wall* did, that we are not here concerned with section 1103, subdivision (b)(1) [formerly subdivision (2)] relating to admission on the issue of consent of evidence of prior sexual conduct of the alleged victim of a sex crime. Rather, we are here only concerned with the issue of evidence of prior nonsexual conduct of the alleged victim. There is no question of consent in the case herein. The entire defense was denial of any sexual relations, consensual or otherwise, with the victim.

295-296 [181 Cal.Rptr. 745], in a prosecution for forcible oral copulation, the appellate court held that the trial court committed error in excluding testimony that on two prior occasions, at the same bar, the complainant had falsely complained of being a victim of purse snatch and having been kidnaped.

We are not persuaded by the People's argument that the evidence herein was inadmissible as a matter of law. The People rely on *People* v. *Jones* (1984) 155 Cal.App.3d 153 [202 Cal.Rptr. 162], and 2 Jefferson, California Evidence Benchbook (2d ed. 1982) section 28.1, page 847 for the proposition that *Wall* incorrectly interprets the various Evidence Code sections. But, regardless of whether Evidence Code section 787 would make this evidence of allegedly prior false accusations inadmissible if its *only* relevancy was to attack the victim's credibility as a witness, it was admissible under Evidence Code section 1103 on the substantive issue of defendant's guilt or innocence. (See 2 Jefferson, Cal. Evidence Benchbook, *supra,* § 28.5, pp. 889-892.)

Furthermore, the court erred in excluding the evidence under Evidence Code section 352. ■ It is well settled that a trial court's exercise of discretion under Evidence Code section 352 will not be reversed on appeal absent a clear showing of abuse. (*People* v. *Northrop* (1982) 132 Cal.App.3d 1027, 1042 [182 Cal.Rptr. 197], disapproved on other grounds in *People* v. *Smith* (1984) 35 Cal.3d 798 [201 Cal.Rptr.311, 678 P.2d 886].) ■ "Section 352 permits the trial judge to strike a careful balance between the probative value of the evidence and the danger of prejudice, confusion and undue time consumption. That section requires that the danger of these evils substantially outweigh the probative value of the evidence. This balance is particularly delicate and critical where what is at stake is a criminal defendant's liberty." (*People* v. *Lavergne* (1971) 4 Cal.3d 735, 744 [94 Cal.Rptr. 405, 484 P.2d 77].) Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and his right to present all relevant evidence of significant probative value to his defense. (*People* v. *Taylor* (1980) 112 Cal.App.3d 348, 364 [169 Cal.Rptr. 290]; *People* v. *Reeder* (1978) 82 Cal.App.3d 543, 553 [147 Cal.Rptr. 275].) Of course, the proffered evidence must have more than slight relevancy to the issues presented. (*People* v. *Northrop, supra,* 132 Cal.App.3d at p. 1042.) ■ We further recognize that a defendant's right to present his defense theory is a fundamental right and that all of his pertinent evidence should be considered by the trier of fact. (*Davis* v. *Alaska* (1974) 415 U.S. 308, 317 [39 L.Ed.2d 347, 354, 94 S.Ct. 1105]; *People* v. *Reeder, supra,* 82 Cal.App.3d at p. 552.) Although the proffered evidence here was conflicting with respect to whether Mary had even accused Fields of having tried to rape her, and there was at least some dissimilarity in the incidents since Mary never

reported Fields's incident to the police, the evidence of prior allegedly false accusations is highly relevant. Moreover, since the evidence was to be presented by the testimony of three witnesses, two of whom testified anyway, the presentation of said evidence would not consume an undue amount of time. Nor would the jurors necessarily be confused or misled if they were given the opportunity to compare the circumstances of this case with the Fields incident to determine if the victim lied and would do so again in similar circumstances. Accordingly, since the trial court's discretion should "favor the defendant in cases of doubt" (*People* v. *De Larco* (1983) 142 Cal.App.3d 294, 306 [190 Cal.Rptr. 757]), the trial court properly should have admitted this evidence.

■ We are however convinced that the trial court's error was harmless. We do not believe that absent the error, it is reasonably probable that a result more favorable to defendant would have been reached. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) This is not a case which rests solely upon the credibility of one victim's testimony versus the defense testimony. There was substantial corroboration of the victim's claim that she had been raped. There was evidence of sperm in her vaginal fluid, and a special sperm saliva blood test indicated that defendant could not be excluded as the possible donor. Defendant was not claiming consensual sex. He was claiming he had no sexual relations at all with the victim. There was also medical evidence of bruises. In addition, although defendant basically relied on an alibi, one of defendant's own witnesses corroborated the victim's testimony that shortly before 2 a.m. in the morning, defendant walked her out to the car. The rape was reported no later than 3 a.m. At the very time the victim was reporting the rape to the bail bondsman, defendant walked right by, showing that he was still in the same area. Moreover, the victim took the police to defendant's apartment house and later drew a basically accurate sketch of the interior of the apartment for a policewoman. Accordingly, the erroneous exclusion of the evidence does not require a reversal of the judgment.

## III.

### THERE WAS NO SENTENCING ERROR

Defendant contends that the trial court committed sentencing errors which require a remand. We disagree. Defendant was sentenced to a total of sixteen years consisting of an upper base term of eight years in count one, a full consecutive upper base term of eight years in count two, and a concur-

rent eight-year term in count three. As defendant acknowledges, the trial court correctly recognized that it had three sentencing choices to make which required articulation of reasons: (1) imposing a consecutive sentence in count two rather than a concurrent one; (2) imposing the consecutive sentence under the harsher full-term provision of Penal Code section 667.6, subdivision (c), rather than under the more lenient one-third provision of section 1170.1, subdivision (a); (see *People* v. *Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585]; *People* v. *Belmontes* (1983) 34 Cal.3d 335, 347-348 [193 Cal.Rptr. 882, 667 P.2d 686]; *People* v. *Smith* (1984) 155 Cal.App.3d 539, 543 [202 Cal.Rptr. 259]) and (3) imposing the upper or high base term.

■ Defendant, however, argues that the trial court made an improper dual use of facts in using the same great-violence factor (Cal. Rules of Court, rule 421(a)(l)) to justify both the upper term in count one and its choice of full-term consecutive sentences. (Cal. Rules of Court, rule 441; *People* v. *Key* (1984) 153 Cal.App.3d 888 [203 Cal.Rptr. 144].) But, the court also articulated several additional, valid bases for imposing consecutive or full-term consecutive sentences, including, for example, defendant's pattern of violent conduct (Cal. Rules of Court, rule 421(b)(l)); the number and increasing seriousness of his prior convictions (Cal. Rules of Court, rule 421(b)(2)); past record of prior prison term (Cal. Rules of Court, rule 421 (b)(3)). Thus any error was harmless. (See *People* v. *Collins* (1981) 123 Cal.App.3d 535, 539 [176 Cal.Rptr. 696].)

Nor is remand for resentencing required because in choosing to impose the upper term on count two, the court cited to the victim's vulnerability (Cal. Rules of Court, rule 421(a)(3)). Defendant argues that that factor is not supported by the record. ■ We, however, agree with *People* v. *Salazar* (1983) 144 Cal.App.3d 799, 813 [193 Cal.Rptr. 1], that a rape victim is sufficiently and particularly vulnerable for purposes of aggravation where, as here, she is isolated inside the defendant's residence. In any event, the imposition of an aggravated term may be sustained upon a single valid factor. (*People* v. *Dreas* (1984) 153 Cal.App.3d 623, 636 [200 Cal.Rptr. 586].) Here, in support of its imposing the high term in count 2, the court also orally stated on the record an additional valid aggravating factor of premeditation (Cal. Rules of Court, rule 421(a)(8)). Indeed, in the case herein, the court not only made it clear that it had found no circumstances in mitigation but also, at the close of sentencing, enunciated still another valid factor for its sentencing choices—the defendant's prior unsatisfactory performance on probation (Cal. Rules of Court, rule 421(b)(5)).

### DISPOSITION

Accordingly, the judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.