Filed 1/27/25  P. v. Pinto CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>ADRIAN OSWALD PINTO,<br><br>　　Defendant and Appellant. | 2d Crim. No. B324271<br>(Super. Ct. No. 19F-09106)<br>(San Luis Obispo County) |

Appellant Adrian Oswald Pinto appeals from the judgment entered after a jury convicted him of forcible rape and sexual penetration by foreign object.  For the reasons set forth below, we will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant met Lindsey Doe at the tanning salon where she worked.  He came in nearly every day and they frequently chatted.  On Halloween a few months after they met, they exchanged text messages and met up at a bar called the Frog and Peach, eventually ending up at a bar called The Mark.  Appellant

bought Doe drinks but she did not drink them. When questioned by the People, she testified she and appellant did not kiss and appellant did not try to kiss her. When Doe talked to other men at the bars, appellant became defensive and a "little aggressive" criticizing the men she chose to talk to. When Doe was talking to the bartender at The Mark, appellant began shouting and screaming loudly at Doe. They decided to go outside and talk about it. Appellant remained upset, "not liking that [Doe] was talking to people."

Doe decided to go home. She had planned to take an Uber but appellant offered her a ride, saying an Uber would not be safe. She agreed. At first appellant asked Doe several times to go to his house, but she declined. He drove them to his apartment anyway, and invited her inside, but she again declined. They sat in his car for about 30 minutes while he asked her repeatedly to come in and she repeatedly said she wanted to go home. He started driving again, and as he drove he put his hand under her dress and inside her underwear. She could not push him off as his fingers started to go between her labia. She froze, told him to stop, and he eventually did. He then drove down a dark dirt road, said, "No one will see us over here," and parked. He climbed over the center console, pulled his pants down, got on top of her, and put his penis into her vagina. Doe was telling him to "[s]top, stop, stop." Appellant was bigger than Doe and she could not push him off. He eventually stopped.

After appellant dropped Doe at home, she tried calling everyone in her family, but no one answered. She texted her mother, "I need your help," and fell asleep crying. The next day she awoke to find police and her mother at her front door. She was interviewed by detectives and agreed to a Suspected Abuse Response Team (SART) medical exam. In the following days Doe

noticed pain in her legs and arms and some bruising, which she photographed.

Defense evidence consisted of the testimony of Ryan Valliere. Valliere had known appellant for approximately five years and was with appellant when appellant met Doe at the Frog and Peach and later went with them to The Mark. He described Doe's and appellant's behavior as "flirtatious," and that Doe was being "assertive as far as flirting and holding hands." He saw Doe and appellant kissing at both bars and testified Doe appeared to be drinking at both bars. He never saw them arguing, or appellant yelling at Doe. He stated he saw a consensual and sexually charged relationship between Doe and appellant. He testified he does not drink or use drugs and was completely sober that evening. He stated appellant called him the next morning and said he and Doe had "hooked up" and that "I think it's going to work out." Later that day appellant told him he, appellant, was being accused of rape.

Appellant was charged with one count each of forcible rape (Pen. Code, § 261, subd. (a)(2)) and foreign object penetration (*id.*, § 289, subd. (a)(1)(A)). Both were alleged serious felonies (*id.*, § 1192.7, subd. (c)) and violent felonies (*id.*, § 667.5, subd. (c)). The information alleged aggravating factors listed in California Rules of Court, rule 4.421 (a)(1) [the "crime involved great violence, great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"], rule 4.421 (a)(11) [the "defendant took advantage of a position of trust or confidence to commit the offense"], and rule 4.421 (b)(1) [the "defendant has engaged in violent conduct that indicates a serious danger to society"].

A jury convicted appellant on both counts. There was no trial on the aggravating factors because the prosecutor did not

seek an upper term sentence. The court weighed aggravating and mitigating factors, sentencing him to the low term of three years on each count, to be served consecutively pursuant to Penal Code section 667.6, subdivision (d), for a total aggregate term of six years. He was ordered to pay restitution and register as a tier three sex offender, subject to lifetime registration. (Pen. Code, § 290, subd. (c)(3)(C)(ii).)

## DISCUSSION

### *Exclusion of Prior Sexual Conduct Evidence*

California's rape shield law prohibits a defendant from admitting evidence of a complaining witness's prior sexual conduct to prove consent. But such evidence may be admissible to impeach witness credibility if its probative value outweighs its risk of prejudice and the defendant complies with procedures set forth in Evidence Code section 782[1]. (§ 1103, subd. (c)(1), (5).)

Section 782 requires a defendant make a written motion and an offer of proof by affidavit that the proffered evidence is relevant to attack the complaining witness's credibility. (*Id.*, subd. (a)(1), (2).) If the trial court finds defendant's offer of proof is not sufficient, the motion will be denied without a hearing. (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1514.) If it finds a sufficient offer of proof, it shall order a hearing out of the jury's presence and allow the complaining witness to be questioned regarding the offer of proof. (§ 782, subd. (a)(3).) If the court finds the evidence is relevant under section 780[2] and not

---

[1] Further undesignated statutory references are to the Evidence Code.

[2] Section 780 provides that "in determining the credibility of a witness" the trier of fact may consider "any matter that has any tendency in reason to prove or disprove the truthfulness of

4

inadmissible under section 352, the court may make an order specifying the evidence that may be introduced by defendant and the questions permitted. (§ 782, subd. (a)(4); see also *People v. Fontana* (2010) 49 Cal.4th 351, 354.) We review a trial court's ruling on the admissibility of prior sexual conduct evidence for abuse of discretion. (*People v. Bautista* (2008) 163 Cal.App.4th 762, 782.)

### 1. *Exclusion of Evidence to Impeach Witness Credibility*

Doe was examined by a SART nurse less than 24 hours after the incident. She was asked if she had sexual intercourse in the past five days and if she had oral sex in the past 24 hours. She answered no to both questions. Testing revealed DNA samples obtained from her vulvar and mons pubis regions were consistent with two male contributors.

Defense counsel complied with section 782, moving to impeach Doe's credibility with expert testimony regarding the DNA evidence. The offer of proof indicated the expert would testify the DNA findings contradicted Doe's statements to the SART nurse. The prosecution argued, without support, the evidence was not relevant because the small amount of DNA could have come from contact besides vaginal or oral sex and thus could not prove Doe lied to the SART nurse.

The trial court found there was not "a sufficient showing of probative value." It explained, "[W]hat she told the [SART nurse]

_____

[the witness'] testimony." The section includes a nonexclusive list of matters that may be considered, including "[a] statement made by [the witness] that is inconsistent with any part of his [or her] testimony at the hearing" (*id*., subd. (h)) and"[t]he existence or nonexistence of any fact testified to by [the witness.]" (*id*., subd. (i)) and a witness' "admission of untruthfulness." (*id*., subd. (k).)

. . . given the limited probative value of the DNA evidence, doesn't rise to the level of supporting that exception to Evidence Code Section 782." It excluded the evidence "based on [the limited probative value of the DNA evidence] and . . . Evidence Code Section 352 . . . ."

Appellant contends the trial court erred when it failed to hold a hearing for Doe to be questioned about her statement to the SART nurse. Without a hearing the trial court was prevented from "learning the full facts associated with Doe's statement and what exactly the presence of the second [DNA] sample might indicate." Appellant further contends that exclusion of the DNA evidence and statement to the SART nurse was error. (*People v. Franklin* (1994) 25 Cal.App.4th 328, 335 [victim's statement something that is not true is true is admissible as relevant to the witness' credibility even if it concerns the victim's sexual conduct].)

We need not decide whether the court erred in either instance, however, because appellant has not shown a miscarriage of justice. (Cal. Const., art. VI, § 13; § 354; *People v. Breverman* (1998) 19 Cal.4th 142, 173 [erroneous exclusion of evidence warrants reversal only if it led to a miscarriage of justice].)

Appellant attacked Doe's credibility via multiple witnesses whose description of circumstances that evening were contrary to Doe's testimony. For example, Valliere's testimony regarding Doe's conduct prior to the rape differed substantially from Doe's own accounts; Nurse Ramirez testified she did not observe any bruising or injuries to Doe's arms despite Doe's report of same; Detective Wyett testified Doe never told him numerous facts she later recounted in her testimony and that she made contradictory statements during their two interviews, including whether she

6

drank any of the drinks appellant bought her. Appellant also cross-examined Doe and elicited differences in her testimony and what she had reported to detectives about what occurred, giving the jury an opportunity to evaluate her testimony and credibility. In light of this evidence, Doe's possibly false statement to a SART nurse had limited probative value. "A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted. [Citations.]" (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624,)

### 2. *Exclusion of Evidence to Explain Bruises*

In his opening brief appellant asserts, "[t]he People relied heavily on the infliction of bruising to Doe's body to corroborate her allegations at trial. The jury then was confronted with only one explanation for the bruising . . . . Given such incomplete information the jury was invariably guided to believe that [appellant] was the only possible cause . . . ."

Prior sexual conduct evidence may be admitted when offered to explain injuries allegedly caused by defendant. (*People v. Fontana, supra*, 49 Cal.4th at p. 363.) However, appellant's sole trial argument for admitting the prior sexual conduct evidence was to attack Doe's credibility. "'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.'" (*People v. Graham* (2024) 102 Cal.App.5th 787, 798.) We decline to consider this forfeited argument.

### *Exclusion of Prior Police Report*

Appellant contends the trial court erred in excluding evidence Doe made a prior false police report concerning an incident in which she was battered.

7

The prosecution sought to exclude this evidence as irrelevant, arguing it would be an undue consumption of time and confusing for the jury (§ 352), because the defendant pleaded guilty and litigating whether the police report was inconsistent with surveillance video would necessitate a trial within a trial.

After the trial court reviewed the police report and watched the surveillance video, it found inconsistencies and granted the prosecution's request for a section 402 hearing (§ 402). Doe and the reporting officer both testified. Following argument by the parties, the trial court found the probative value for impeaching Doe was "not very high at all" and excluded the evidence stating, "[A] battery did occur. So it was a report of a battery." And "based on what I heard and the possibilities of what happened one way or the other on two sides of a bar fight" admitting the evidence would turn into "a bar fight trial within a rape trial."

Section 352 confers "substantial discretion to exclude collateral evidence." (*People v. Wall* (1979) 95 Cal.App.3d 978, 986-987.) "We will not reverse a court's ruling on such matters unless it is shown "'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'"" (*People v. Merriman*, *supra*, 60 Cal.4th at p. 74.) Here, there was no abuse of discretion. The trial court noted that although there appeared to be inconsistencies between the video and police report, the video did not show all that had occurred. The trial court reasonably concluded allowing questioning regarding what precisely happened would consume undue time on a matter for which the evidence was unclear and thus the probative value was low.

We also reject appellant's claim exclusion of this evidence violated his Sixth Amendment right to fair trial. As we explained with regard to the excluded SART statement and DNA evidence,

8

appellant presented ample evidence attacking Doe's credibility. He was not denied a fair trial. (*People v. Ayala* (2000) 23 Cal.4th 225, 301 ["[W]e have repeatedly held that 'not every restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance.'"].)

*Substantial Evidence Supports a Conviction for Count Two.*

Appellant asserts his conviction under count two must be reversed because evidence failed to show either genital or vaginal penetration occurred. He "bears a massive burden in claiming insufficient evidence to sustain his convictions because our role on appeal is a limited one." (*People v. Akins* (1997) 56 Cal.App.4th 331, 336.) We "'examine the entire record in the light most favorable to the prosecution, presuming in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.] . . . [I]f the verdict is supported by substantial evidence, we are bound to give due deference to the jury and not retry the case ourselves." (*Ibid.*) "Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction." (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

Appellant concedes the law defines penetration as "the act of causing the penetration, however slight, of the genital or anal opening of any person . . . ." (Pen. Code, § 289, subd. (k)(1).) Case law here is settled: sexual penetration "'however slight, of the genital . . . opening[]' refers to penetration of the labia majora . . . ." (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1364.) Doe testified appellant was "rubbing" her with his hand

9

"underneath [her] clothes" and that his fingers "start[ed] to go between [her] labia." After listening to and observing her testimony, the jury found that when appellant's fingers "start[ed] to go between [her] labia," sexual penetration "however slight" occurred. This is sufficient evidence to support appellant's count two conviction.

*Prosecutorial Misconduct*

Appellant contends the prosecutor engaged in misconduct by introducing evidence in violation of a specific pretrial evidence ruling. (*People v. Williams* (2009) 170 Cal.App.4th 587, 629 [eliciting evidence in violation of a trial court ruling is prosecutorial misconduct].) When a prosecutor's error is "'''"so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process,'"'''" (*People v. Hill* (1998) 17 Cal.4th 800, 819) we evaluate its prejudicial effect under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]. Conduct implicating state rights occurs if a prosecutor uses "'''"deceptive or reprehensible methods to attempt to persuade either the court or the jury"'"'''" (*Hill*, at p. 819) and is evaluated for prejudice under *People v. Watson* (1956) 46 Cal.2d 818. We will not reverse under *Watson* "unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

Defense counsel agreed to the prosecutor's introduction of a recorded statement made when appellant was arrested, but moved to exclude any references to the kidnap, rape, and murder of his mother when he was a child. The trial court ordered the recording redacted and witnesses instructed not to comment on the issue. Though the transcript was properly redacted, the recording was not, and a reference to appellant's mother's murder

10

was played for the jury.  During a recess outside the jury's presence defense counsel objected to the unredacted portion of the recording.  Concerned about drawing attention to the issue, he declined a juror admonition and moved for mistrial.  The prosecutor argued it was an inadvertent mistake not rising to the level of prejudicial error and curable by admonition.  The court found no misconduct and denied the motion for mistrial.  Defense then asked the court to repeat a previous admonition not to read into or speculate about the redactions in the recording or the transcript.  The court did so, and trial resumed.

We agree the prosecutor's failure to properly redact the recording constituted error since it elicited evidence in violation of the court's order.  But the unredacted portion of the recording was equivalent to two lines of text in a 70-page transcript.  This minor error did not render the trial so fundamentally unfair that it constituted prejudice under the federal standard.  Nor has appellant shown it is reasonably probable a more favorable result would have been reached absent the error.  Considering the evidence of appellant's guilt and the curative juror admonition, we conclude the error was harmless.

*Consecutive Sentences Are Proper*

Penal Code section 667.6 authorizes imposition of full, separate, and consecutive terms for each sex offense involving separate victims or the same victim on separate occasions.  (Pen. Code, § 667.6, subd. (d)(1).)  "In determining whether crimes against a single victim were committed on separate occasions . . . the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon [their] actions and nevertheless resumed sexually assaultive behavior." (*Id*., subd. (d)(2).)  The duration of time between crimes is not, by itself, determinative of

11

whether the crimes occurred on separate occasions.  (*Id.*, subd. (d)(1), (2).)

Appellant contends "no evidence" supports finding the forcible penetration and rape occurred on separate occasions.  He relies on *People v. Corona* (1988) 206 Cal.App.3d 13 (*Corona*)[3] and *People v. Peña* (1992) 7 Cal.App.4th 1294 (*Peña*)[4], arguing, "[t]here does not appear in the record any discussion of measurable or appreciable time elapsing between the cessation of the alleged penetration and [appellant] raping Doe."

Appellant's reliance on *Corona* and *Peña* is misplaced. Neither case holds evidence of a "measurable or appreciable" time period is required to find the sex offenses occurred on separate occasions.  Rather, both cases provide that unless no reasonable trier of fact could so conclude, a trial court's finding the conduct occurred on separate occasions will be upheld if the trial court found the time period and circumstances were sufficient for defendant to stop and reflect on his actions.  (*People v. Plaza* (1995) 41 Cal.App.4th 377, 385, citing *Corona, supra*, 206 Cal.App.3d at p. 18, fn. 2, and *Peña, supra*, 7 Cal.App.4th at p. 1314.)

Here, the trial court found appellant had a reasonable opportunity to reflect on his conduct and cease his sexually assaultive behavior but instead chose to continue.  The court explained, "from the time . . . Doe started telling [appellant], no,

---

[3] In *Corona* a distinct line was drawn between two sets of rapes separated in time by the defendant ceasing the sexual assault while he left the victim in a vehicle, then returning a few minutes later to resume the sexual assault.

[4] In *Peña*, Penal Code section 667.6, subd. (d) did not apply because the sexually abusive conduct was continuous.

and pushing his arm away while he was driving . . . , he had the chance to stop the conduct. When she told him repeatedly to take her home and he came to the intersection . . . he had the opportunity . . . to turn left and drive her home, to stop the conduct at that time. Instead he decided to pull off and . . . then to rape her." Substantial evidence supports this finding.

*No cumulative error*

Appellant claims cumulative error. We have determined each of his contentions lack merit. There is no cumulative error. (*People v. Avila* (2006) 38 Cal.4th 491, 608.)

DISPOSITION

Judgment is affirmed.

NOT TO BE PUBLISHED.



CODY, J.

We concur:


YEGAN, Acting P.J.


BALTODANO, J.

Craig B. Van Rooyen, Judge
Superior Court County of San Luis Obispo
_____

The Law Offices of Jonathan Reza, Jonathan K. Reza; Action Defense Law, Action Lavitch, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez, and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.