Filed 9/8/20  P. v. Statum CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DAYMOND STATUM, Defendant and Appellant. | B297613 Los Angeles County Super. Ct. No. YA097807 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hector Guzman, Judge. Reversed and remanded with instructions.

Robert A. Werth, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Acting Senior Attorney General, Michael R. Johnson and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant and appellant Daymond Statum of corporal injury to a cohabitant within seven years of a prior conviction, in violation of Penal Code section 273.5, subdivision (f)(1).[1] The jury also found true the allegations that Statum personally used a deadly and dangerous weapon, a ceramic bowl (§ 12022, subd. (b)(1)), and that Statum personally inflicted great bodily injury. (§ 12022.7, subd. (e).)

Statum raises three issues on appeal. First, he argues the trial court erred by improperly admitting testimony about statements made by the victim. Statum alleges the statements were hearsay and did not fall within the spontaneous statement exception to the hearsay rule. Second, Statum argues the weapon use and great bodily injury enhancements should be stricken because they are unsupported by substantial evidence. Finally, Statum contends the trial court erroneously imposed a Domestic Violence Fund Fee. We reject Statum's first two arguments, but remand the case to the trial court with instructions to strike the domestic violence fee.

# PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an information against Statum alleging one count of corporal injury to a cohabitant after a prior conviction of corporal injury to a

---

[1] All undesignated statutory references are to the Penal Code.

2

cohabitant within seven years. (§§ 273.5, subd. (a), 273.5, subd. (f)(1).) The information also alleged Statum (1) personally used a deadly and dangerous weapon, a ceramic bowl, and (2) personally inflicted great bodily injury upon the victim. (§§ 12022, subd. (b)(1), 12202.7, subd. (e).) It further alleged Statum sustained a prior strike conviction. (§§ 1170.12 subd. (a), 667, subds. (b)-(i).) The jury found Statum guilty and found the weapon use and great bodily injury enhancements true. The court found the prior strike true in a bifurcated proceeding outside the presence of the jury.

The trial court sentenced Statum to the mid-term of four years as to the base count, doubled to eight years because he sustained a prior strike conviction. The court also imposed the low term of three years pursuant to section 12022.7, subdivision (e) and an additional one year under section 12022, subdivision (b)(1). Finally, the trial court imposed a $500.00 Domestic Violence Fund Fee pursuant to section 1203.097, subdivision (a)(5).

## FACTUAL BACKGROUND

Statum lived with the victim, Antaneka Watson, along with their three children. On December 28, 2017, Statum and Watson were lying in bed watching television. Statum was eating cereal from a bowl. The couple argued and Statum suddenly stood up. Immediately after, Watson realized she was bleeding from her mouth. Watson did not see what caused her bleeding, but she had milk and cereal on her. Watson went to the bathroom and saw her tooth was cracked. After Watson told defendant she was going to call the police, she ran to the apartment complex

3

management office. Once in the management office, Watson spoke to an apartment complex employee, Latrice Clay. Immediately after, Watson called 911. Watson told the 911 operator the father of her children had "busted open" her head and tooth.

Clay was in the apartment complex office when Watson entered the office lobby. Clay observed Watson crying, shaking, and bleeding from the forehead and mouth. Clay also observed Watson had cereal and milk in her hair. After Watson hung up with 911, Clay asked her what had happened. Watson said the father of her children had hit her in the face with a bowl.

Police arrived and took photographs of Watson's injuries, which included a cut on her forehead, a cut on her mouth, and a chipped tooth. Watson took pain medication for a day and went to a dentist to have her tooth fixed.

At trial, Watson testified about a prior domestic violence incident involving defendant. Watson claimed she could not recall many details because the incident occurred several years prior, on March 27, 2017. A Los Angeles County Deputy Sherriff provided additional details of the incident. Watson and Statum had engaged in an argument. Statum subsequently punched Watson five to six times and slapped her in the face. As a result, Watson fell to the floor while holding her son. The deputy sheriff observed a bump on Watson's forehead and a laceration on her back. The parties stipulated Statum was convicted of a section 273.5 violation as a result of the incident.

# DISCUSSION

## I.    *Statum's Evidentiary Argument*

Statum contends the trial court erred by admitting the statements Watson made to the apartment complex employee, Clay. Specifically, he asserts the statements were hearsay and thus inadmissible, and the trial court erred by concluding they were admissible under the spontaneous statement exception to the hearsay rule.

### 1. Background

The trial court held an Evidence Code section 402 hearing to determine whether the statements were admissible. It found Clay's statements fell within the spontaneous statement exception to the hearsay rule. (Evid. Code § 1240.) The trial court pointed to Watson's demeanor while she made the statements. She was "screaming[,] shaking[,] crying." Because of her demeanor, the trial court found Watson was still "under the stress of excitement[,] when speaking to Clay." On appeal, defendant contends Watson's statements were not spontaneous because she had ample opportunity to regain her composure before making the statements to Clay.

### 2. Legal principles

"'The decision to admit evidence under . . . section 1240 is reviewed for abuse of discretion. "Whether the requirements of the spontaneous statement exception are satisfied in any given case is, in general, largely a question of fact . . . . In performing

this [analysis], the court 'necessarily [exercises] some element of discretion. . . .'" We will uphold the trial court's determination if its resolution of factual questions is supported by substantial evidence. We review for abuse of discretion the ultimate decision whether to admit the evidence." (*People v. Stanphill* (2009) 170 Cal.App.4th 61, 73, citations omitted.)

Under Evidence Code 1240, "[e]vidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) [p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) [w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." Purported spontaneous statements require "'(1). . . some occurrence startling enough to produce [ ] nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement [still] dominate[s] and the reflective powers [remain] in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' [Citations.]" (*People v. Poggi* (1988) 45 Cal.3d 306, 318; cf. *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 416; *People v. Merriman* (2014) 60 Cal.4th 1, 64.)

"""Whether the requirements of the spontaneous statement exception are satisfied in any given case is, in general, largely a question of fact. [Citation.]"'" (*People v. Stanphill, supra*, 170 Cal.App.4th 61, 73.) "The crucial element in determining whether an out-of-court statement is admissible as a spontaneous declaration is the mental state of the speaker. [Citation.]" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 811.) The court considers a "number of factors" in determining whether "the declarant was

still under the stress and excitement of the startling event and before there was 'time to contrive and misrepresent.' [Citation.] Such factors include the passage of time between the startling event and the statement, whether the declarant blurted out the statement or made it in response to questioning, the declarant's emotional state and physical condition at the time of making the statement, and whether the content of the statement suggested an opportunity for reflection and fabrication. [Citations.]" (*People v. Merriman, supra,* 60 Cal.4th at p. 64; see, e.g. *People v. Brown* (2003) 31 Cal.4th 518, 541 [the trial court properly considered the declarant "was crying, shaking and visibly upset" when making the statement].) "[N]o one factor or combination of factors is dispositive. [Citations.]" (*People v. Merriman, supra,* 60 Cal.4th 1, 64-65.)

"Because the . . . requirement. . . that the statement was made before there was "'time to contrive and misrepresent,'" 'relates to the peculiar facts of the individual case more than the [other requirements] [citations], the discretion of the trial court is at its broadest when it determines whether this requirement is met.' [Citation.]" (*People v. Lynch* (2010) 50 Cal.4th 693, 752.) While a lapse in time is relevant to the spontaneous statement analysis, "'[t]he amount of time that passes between a startling event and subsequent declaration is not dispositive[.] [The amount of time] will be scrutinized, along with other factors, to determine if the speaker's mental state remains excited.' [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 926 [seven-hour time lapse between event and utterance "retained . . . spontaneity because . . . [declarant's] mental and physical condition prevented her from reflecting on and fabricating her account of what had happened. [Citations.]"]; see *People v.*

7

*Penunuri* (2018) 5 Cal.5th 126, 152-153 ["trial court did not abuse its discretion in concluding [the declarant] was still in an excited and unreflective state of stress" 20-40 minutes after startling occurrence].) "'Although . . . responses to detailed questioning are likely to lack spontaneity, . . . an answer to a simple inquiry may be spontaneous. [Citation.] The trial court must consider each fact pattern on its own merits and is vested with reasonable discretion in the matter. [Citation.]' [Citation.]" (*People v. Stanphill, supra*, 170 Cal.App.4th at p. 73.)

### 3. Analysis

Applying the above-stated principles, we reject Statum's contention that the trial court abused its discretion. Watson was caught off guard when the bowl hit her in the face. She became even more startled when she realized she was bleeding from her face and that her front tooth was chipped. Watson was still crying, shaking, and yelling when she arrived at the management office and spoke to Clay. While some time had passed since Statum had hit her in the face with the bowl, the record indicates she was still in a state of unreflective stress. Further, she was still covered in milk and cereal from the incident and had not had the opportunity to clean herself. The statements made by Watson to Clay related specifically to what had happened between her and Statum. We therefore find the trial court did not abuse its discretion in finding the statements Watson made to Clay fell within the spontaneous statement exception to the hearsay rule.

## II. The Sentencing Enhancements Were Supported by Substantial Evidence

Statum argues the great bodily injury (§12022.7, subd. (e)) and personal use of a dangerous or deadly weapon (§ 12022, subd. (b)(1)) enhancements were not supported by substantial evidence. We disagree. We will discuss each enhancement in turn.

### 1. Great Bodily Injury Enhancement

Statum argues the great bodily injury enhancement should be stricken because the injuries Watson sustained were only "minor or moderate harm." He therefore argues the section 12022.7, subdivision (e) enhancement must be vacated. We disagree.

Under section 12022.7, subdivision (e), "[a]ny person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years." Great bodily injury is defined as "significant or substantial physical injury." (§ 12022.7, subd. (f).)

"The determination of whether the harm resulting to the victim constitutes great bodily injury is a question of fact, and the finding will be upheld if there is sufficient evidence to sustain it. [Citation.] 'A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description. Clearly it is the trier of fact that must in most situations make the determination.' [Citations.]" (*People v. Lopez* (1986) 176 Cal.App.3d 460, 463.) ""If there is sufficient evidence

9

to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding.'" [Citations.]" (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) "Proof that a victim's bodily injury is 'great'—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury. [Citations.]" (*People v. Cross* (2008) 45 Cal.4th 58, 66.) There is "no specific requirement that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." (*People v. Escobar*, *supra*, 3 Cal. 4th at p. 750.) "Abrasions, lacerations, and bruising can constitute great bodily injury. [Citation.]" (*People v. Jung* (1999) 71 Cal.App.4th 1036, 1042.)

Here, Watson suffered cuts on her mouth and forehead and a chipped tooth. Watson took pain medication for a day and went to a dentist to have her tooth fixed. While Watson's injuries were not permanent, the jury was entitled to conclude they constituted great bodily injury. We therefore find the great bodily injury enhancement was supported by substantial evidence.

## 2. *Dangerous or Deadly Weapon Enhancement*

Statum next argues the weapon use enhancement is not supported by substantial evidence because the ceramic bowl was not a dangerous or deadly weapon.

Under section 12022, subdivision (b)(1), "A person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional

and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense."

"There are two categories of 'dangerous or deadly weapons.' First, there are those instrumentalities which are weapons in the strict sense of the word, such as guns, dirks, etc. Second, there are those instrumentalities which are not weapons in the strict sense of the word, but which *may* be used as such, such as . . . heavy objects. These are not weapons in the strict sense of the word and are not 'dangerous or deadly' to others in the ordinary use for which they are designed. As such they may not be said as a matter of law to be dangerous or deadly weapons." (*People v. Reid* (1982) 133 Cal.App.3d 354, 365.) "When it appears that an instrumentality . . . is *capable* of being used in a dangerous or deadly manner, *and* it may be *fairly inferred* from the evidence that its possessor *intended* on a particular occasion to use it as a weapon should the circumstances require, its character as a dangerous or deadly weapon may be established, at least for the purposes of that occasion. [Citations.] [Fn. omitted.]" (*Ibid*.) When an item falls into the second category, "the only issue we have before us is whether it could be 'fairly inferred from the evidence' that" defendant "*intended* to use" the item "in a dangerous or deadly manner[.]" (*Ibid.)* "The item cannot be considered to be dangerous or deadly unless it appears that it is *capable* of being used in a dangerous or deadly manner *and* it may be inferred from the evidence that the user intended to use it as a weapon should the circumstances require. [Citation.]" (*Id*. at p. 367.)

A cereal bowl is not a weapon in the strict sense of the word and thus falls into the second category. The bowl used was a heavy object as evidenced by the victim's injuries, lacerations to

11

her face and a chipped tooth. No witness identified what the bowl was made of. Photos appear to depict a ceramic bowl containing milk and cereal. Statum hit Watson's face with the bowl in the midst of an argument.

In sum, we conclude substantial evidence supports the conclusion Statum intended to use the bowl in a dangerous manner.

### III.   *The Trial Court Erroneously Imposed a $500 Domestic Violence Fund Assessment*

At the sentencing hearing, the trial court imposed a $500 domestic violence assessment. Per the minute order, the payment was imposed pursuant to section 1203.097, subdivision (a)(5). Statum alleges the trial court erroneously imposed the $500 fee. The People agree.

Section 1203.097, subdivision (a)(5) mandates that "a person [who] is granted *probation* for a crime in which the victim is a [cohabitant], the terms of *probation* shall include . . .  [¶]. . . [¶] [a] minimum payment by the defendant of a fee of five hundred dollars ($500) . . . .." (Emphasis added.*)* Here, Statum was sentenced to state prison and was not granted probation. We therefore agree with Statum and the People that the trial court erroneously imposed the $500 fee under section 1203.097 (a)(5).

## DISPOSITION

The case is remanded to the trial court with instructions to strike the Domestic Violence Fund Assessment. The clerk of the superior court is directed to prepare an amended abstract of judgment consistent with this decision, then deliver copies of the corrected abstract to the Department of Corrections. In all other respects, the judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, J.

We concur:

WILLHITE, Acting P.J.

COLLINS, J.

13